IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 23, 2003

## GOVINDASWAMY NAGARAJAN v. MICHAEL E. TERRY

**Appeal from the Circuit Court for Davidson County**
**No. 00C-1168    Barbara N. Haynes, Judge**

---

**No. M2001-01480-COA-R3-CV - Filed December 30, 2003**

---

This appeal involves a dispute between a lawyer and his former client regarding unpaid fees. After the client sued the lawyer for malpractice in the Circuit Court for Davidson County, the lawyer counterclaimed for unpaid fees. The trial court granted the lawyer's summary judgment motion and dismissed the malpractice claims. Thereafter, the trial court conducted a bench trial on the lawyer's counterclaim and awarded the lawyer a $53,884.86 judgment. The former client asserts on this appeal that the trial court erred by denying his request for a continuance, granting a judgment by default on the question of liability, denying his request for a jury trial, and considering expert evidence regarding the reasonableness of the lawyer's fee without affording him the opportunity for cross-examination. We affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Richard J. Braun and Patricia E. Crotwell, Nashville, Tennessee, for the appellant, Govindaswamy Nagarajan.

Stephanie H. Gore, Nashville, Tennessee, for the appellee, Michael E. Terry.

**OPINION**

**I.**

Govindaswamy Nagarajan was terminated as an associate professor of physics at Tennessee State University ("TSU") in the fall of 1989. He retained David E. Mead and, on January 24, 1990, filed a Title VII action in the United States District Court for the Middle District of Tennessee against the president of TSU and others seeking reinstatement, tenure, and monetary damages. Approximately three months later, he filed a second complaint seeking essentially the same relief in the Chancery Court for Davidson County.

At some point after these lawsuits were filed, Dr. Nagarajan, who is apparently quite a demanding client, fired Mr. Mead and retained Walter T. Searcy, III to represent him in the federal Title VII proceeding. In May 1992, the chancery court notified Mr. Mead, who was still Dr.

Nagarajan's lawyer of record, that Dr. Nagarajan's complaint would be dismissed for failure to prosecute unless some action was taken. Mr. Mead informed Dr. Nagarajan of this development. He also reminded Dr. Nagarajan that he had filed this complaint as a tactic to preserve remedies and recommended filing a voluntary nonsuit in the case. The notice of voluntary dismissal was filed on June 16, 1992, and an order of dismissal was entered in the chancery court on June 17, 1992. At the same time, Mr. Mead took steps to formally withdraw as Dr. Nagarajan's lawyer in the chancery court.

Mr. Searcy later withdrew from representing Dr. Nagarajan and was replaced by Thomas K. Bowers in August 1992. Mr. Bowers eventually withdrew, and in November 1993, Dr. Nagarajan retained Michael E. Terry to represent him in the pending Title VII action that was set for trial in March 1994. Mr. Terry agreed to represent Dr. Nagarajan and requested a $10,000 retainer to be paid in installments. Dr. Nagarajan also informed Mr. Terry that he had another suit pending in the chancery court. After Mr. Terry ascertained that the chancery court suit had been dismissed on June 17, 1992, Dr. Nagarajan insisted that it should be placed back on the docket despite Mr. Terry's advice that his remedies in the federal proceeding were adequate.

The trial in the United States District Court was later continued. On August 8, 1994, Mr. Terry, at Dr. Nagarajan's insistence, requested the chancery court to restore Dr. Nagarajan's complaint to the docket and to set a trial date. Thereafter, Mr. Terry tried Dr. Nagarajan's Title VII claim in the United States District Court for several weeks, and the District Court took the case under advisement. At a hearing on September 9, 1994, the chancery court granted the motion to reinstate Dr. Nagarajan's state case to the docket and directed the parties to contact the calendar clerk to set a trial date.[1]

The parties in the chancery court suit took no action to advance the case because they were awaiting the outcome of the August 1994 trial in the United States District Court. On June 5, 1997, the District Court filed an order and memorandum concluding that TSU had discriminated against Dr. Nagarajan in violation of Title VII and that Dr. Nagarajan was entitled to reinstatement as a non-tenured professor and back pay. The court directed the parties to submit their "accounting" of damages for the court's consideration.

On June 13, 1997, approximately one week after the District Court filed its order and memorandum, Mr. Terry received an order dismissing the pending chancery court case for failure to prosecute.[2] When Mr. Terry and Dr. Nagarajan met on June 16, 1997, Mr. Terry informed him that the chancery court case had again been dismissed and advised him that the suit was no longer necessary because he would obtain sufficient relief in the federal proceeding in light of the District Court's June 5, 1997 memorandum. Nonetheless, Dr. Nagarajan insisted that another effort should be made to reinstate his state lawsuit. Mr. Terry thereafter filed a motion to set aside the chancery

---

[1] For reasons not appearing in the record, an order reflecting the trial court's decision at the September 9, 1994 hearing was not entered until August 5, 1996.

[2] This order had been entered on May 12, 1997, and the record contains no clear explanation for Mr. Terry's delay in receiving it.

court's May 12, 1997 order of dismissal.[3]  On December 24, 1997, the District Court entered an order awarding Dr. Nagarajan (1) $356,310.22 in back pay plus interest, (2) $61,037.35 in back Social Security contributions, (3) $33,053.00 in back health insurance contributions, (4) $49,818.53 in back retirement contributions, (5) $10,800.00 in back longevity pay, and (6) 540 hours of sick leave.  In addition, the District Court directed Dr. Nagarajan to submit his application for the payment of attorney's fees.

TSU appealed the District Court's decision to the United States Court of Appeals for the Sixth Circuit.  After the Court of Appeals referred the case to its mandatory settlement process, the State and Dr. Nagarajan engaged in lengthy settlement negotiations.  Eventually, the State offered to withdraw its appeal if Dr. Nagarajan would accept its offer to pay $525,000 in damages.  On June 2, 1998, Mr. Terry recommended that Dr. Nagarajan accept this offer.  Dr. Nagarajan responded on June 5, 1998 instructing Mr. Terry to decline the State's offer because he believed that he might somehow get a better result on appeal even though he had not appealed the District Court's decision.  On June 8, 1998, Mr. Terry advised Dr. Nagarajan that his instructions were unreasonable and requested an opportunity to "discuss the future of [his] representation."  On June 15, 1998, Dr. Nagarajan delivered a letter to Mr. Terry's office terminating his employment.  In August 1998, Dr. Nagarajan hired Richard H. Batson II to represent him in the pending federal appeal and also directed him to undertake to reinstate the state complaint that had been dismissed by the chancery court on May 5, 1997.

On July 19, 1999, the United States Court of Appeals affirmed the District Court's judgment for Dr. Nagarajan.  On March 20, 2000, the District Court awarded Dr. Nagarajan $167,460.00 in attorneys fees relating to his Title VII case.  In April 2000, following negotiations among the five lawyers who had represented Dr. Nagarajan in the federal proceedings, Mr. Terry received $83,000.00 for his work in the case.  Two months later, he received an additional $15,742.49.

On April 27, 2000, Dr. Nagarajan filed a pro se malpractice complaint against Mr. Terry in the Circuit Court for Davidson County seeking $500,000.00 in damages for his failure to reinstate his chancery court complaint against TSU and others.   Mr. Terry responded by denying the malpractice claim and by counterclaiming for unpaid attorney's fees.  In March 2001, Mr. Terry filed a motion for summary judgment seeking dismissal of Dr. Nagarajan's malpractice claim on the ground that it was not timely filed.  The trial court granted the summary judgment in May 2001 and suggested that the parties either mediate the remaining fee dispute or submit it to the Nashville Bar Association's fee dispute committee.

When attempts to resolve the fee dispute proved fruitless, Mr. Terry requested the trial court to set the case on the non-jury docket.  After receiving a September 2001 trial date, Dr. Nagarajan retained James G. Stranch, III to represent him.  The trial was thereafter postponed for another attempt at mediation.  After this attempt failed, the trial was set for September 2002.  The trial was again postponed until December 9, 2002.  On the day of trial, the court learned that Dr. Nagarajan

_____

[3]Between July 1997 and April 1999, the parties continued the hearing on this motion seven times apparently by agreement.  Understandably, they did not desire to press the matter because they were attempting to negotiate a settlement of Dr. Nagarajan's federal damage claim.  The chancery court eventually heard the motion on April 30, 1999, and entered an order on May 14, 1999 declining to set aside the May 12, 1997 order dismissing the complaint for failure to prosecute.  As far as the record shows, no appeal was taken from this order.

had sued one of Mr. Stranch's employees and, therefore, that Mr. Stranch could no longer represent Dr. Nagarajan. Rather than proceeding to trial without a lawyer, Dr. Nagarajan agreed that the trial would be continued until February 10, 2003, and that he would inform the trial court on or before January 17, 2003 either that he had retained a new lawyer to represent him or that he would be proceeding pro se at the February 10, 2003 trial.

On February 7, 2003, Dr. Nagarajan filed a motion for a continuance informing the trial court that he had found a lawyer, Richard J. Braun, who would represent him but only if the trial was again continued.[4] Dr. Nagarajan appeared without a lawyer on February 10, 2003. The trial court denied Dr. Nagarajan's motion for a fourth continuance and granted Mr. Terry a default judgment on the issue of Dr. Nagarajan's liability for additional attorney's fees. The trial court also set a hearing for February 19, 2003 on the issue of damages. Dr. Nagarajan's lawyer sought unsuccessfully to reschedule the February 19, 2003 hearing. Following a bench trial on February 19, 2003, during which Dr. Nagarajan declined to offer any proof regarding Mr. Terry's claim for attorney's fees, the trial court entered an order on February 27, 2003, awarding Mr. Terry a $53,884.86 judgment. Dr. Nagarajan thereafter filed a timely notice of appeal.

## II.
### THE DENIAL OF DR. NAGARAJAN'S MOTION FOR CONTINUANCE

Dr. Nagarajan asserts that the trial court erred by denying his February 7, 2003 motion for a continuance. He asserts that the trial court should have granted the motion because his newly retained lawyer would have been available to try the case on the day after it had been set. We have determined that the trial court did not abuse its discretion by further delaying the trial.

Trial courts have broad discretion over the course and conduct of trials. *State v. King*, 40 S.W.3d 442, 449 (Tenn. 2001); *Justice v. Sovran Bank*, 918 S.W.2d 428, 429-30 (Tenn. Ct. App. 1995); *Marress v. Carolina Direct Furniture, Inc.*, 785 S.W.2d 121, 129 (Tenn. Ct. App. 1989). This discretion extends to decisions regarding motions for a continuance. *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997). Accordingly, the appellate courts should not second guess a trial court's decision on a motion for a continuance unless the record, reviewed as a whole, shows a clear abuse of discretion or that a clear prejudicial error has been committed. *Blake v. Plus Mark, Inc.*, 952 S.W.2d at 415; *Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 775 (Tenn. Ct. App. 2001); *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 175 (Tenn. Ct. App. 2001).

Decisions regarding continuances are fact-specific. Accordingly, motions for a continuance should be viewed in the context of all the circumstances existing when the motion is filed. Among the factors that courts consider are: (1) the length of time the proceeding has been pending,[5] (2) the

---

[4]Mr. Braun had another matter in the United States District Court for the Middle District of Tennessee already set for February 10, 2003.

[5]*Jessee v. American Gen. Life and Acc. Ins. Co.*, No. E2002-00182-COA-R3-CV, 2003 WL 165777, *5 (Tenn. Ct. App. Jan. 24, 2003) *perm. app. dismissed* (Tenn. April 24, 2003); *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992).

-4-

reason for the continuance, (3) the diligence of the party seeking the continuance,[6] and (4) the prejudice to the requesting party if the continuance is not granted.

By the time Dr. Nagarajan filed his motion for continuance on February 7, 2003, the case had been pending for almost three years. It had been first set for trial in September 2001 but had been continued three times. The third continuance was required because Dr. Nagarajan created a conflict with his own lawyer after he sued one of his lawyer's employees. When the trial court granted the third continuance, it reached an explicit understanding with Dr. Nagarajan that he would have until January 17, 2003 to notify the court that he had retained another lawyer and that if he did not retain another lawyer, the trial would proceed on February 10, 2003, and that Dr. Nagarajan would be required to represent himself. These facts support a conclusion that Dr. Nagarajan was not pursuing his case with the sort of diligence that would have merited another continuance.

The record also provides a basis for concluding that the trial court's refusal to grant Dr. Nagarajan a continuance did not materially prejudice his case with regard to both liability and damages. The facts regarding Mr. Terry's representation of Dr. Nagarajan were essentially undisputed and had been set out in great detail in the parties' statements of undisputed material facts. The parties' differences involved the legal conclusions to be drawn from these facts. The only material factual dispute regarded the manner in which Mr. Terry had calculated the additional attorney's fees he was claiming. The trial court's action on February 10, 2003 did not deprive Dr. Nagarajan of his opportunity to cross-examine Mr. Terry on his fee calculation or to introduce evidence on this question because it continued the hearing to February 19, 2003, to enable the parties to address that question. Mr. Terry testified and was subject to cross-examination at that hearing, and Dr. Nagarajan could have presented any other evidence on that issue he desired.

### III.
### THE DEFAULT JUDGMENT ON MR. TERRY'S COUNTERCLAIM

Dr. Nagarajan also asserts that the trial court erred on February 10, 2003, by granting Mr. Terry a default judgment on the issue of Dr. Nagarajan's liability for additional attorney's fees. He insists that he informed the trial court on February 10, 2003, that he was ready to proceed without counsel and, therefore, the trial court should not have sua sponte given Mr. Terry a default judgment. We find no merit in this argument for two reasons.

The first reason is that the record does not support Dr. Nagarajan's self-serving assertion that he informed the trial court during the hearing in chambers on February 10, 2003 that he was prepared to proceeding with the trial without a lawyer. The trial court stated explicitly both in its orders and on the record of the February 19, 2003 hearing that Dr. Nagarajan had represented to the court on February 10, 2003 that he was not prepared to proceed with the trial notwithstanding the December 18, 2002 order. Appealing parties have an obligation to provide appellate courts with an appellate record containing a full, accurate, and complete account of what transpired at trial with regard to the issues raised on appeal. Tenn. R. App. P. 24(a). Dr. Nagarajan has not provided a record of the

---

[6]*Evers v. Sherman*, No. 88-208-II, 1988 WL 132687, *4 (Tenn. Ct. App. Dec. 14, 1988) (No Tenn. R. App. P. 11 application filed); *Hunt v. Hoppe*, 22 Tenn. App. 540, 545, 124 S.W.2d 306, 309 (1938).

February 10, 2003 proceedings.[7] In the absence of such a record, we will accredit a trial court's version of what transpired at a hearing over that of one of the parties.

The second reason is that Dr. Nagarajan never requested the trial court to set aside the default judgment on the question of liability. The decision to grant the default judgment was not immediately appealable because it was not final,[8] and Dr. Nagarajan could have asked the court to set the default judgment aside at the February 19, 2003 hearing. This court generally declines to grant relief on appeal to litigants who were responsible for or who failed to take reasonably available action to prevent the harmful effect of an error. Tenn. R. App. P. 36(a). In light of the conduct of Dr. Nagarajan and his lawyer after February 10, 2003, we find that Dr. Nagarajan is in no position now to take issue with the default judgment.

## IV.
### DR. NAGARAJAN'S RIGHT TO A JURY TRIAL

Dr. Nagarajan argues that he was denied his right to a jury trial on Mr. Terry's counterclaim. He asserts that he had a right to a jury trial on the counterclaim because he requested a jury for his malpractice claim. While Dr. Nagarajan's general demand for a jury survived the dismissal of his complaint, we have determined that Dr. Nagarajan and his lawyer waived his demand for a jury by their acquiescence in placing the case on the trial court's non-jury docket.

### A.

Dr. Nagarajan's legal malpractice complaint contained a demand for a jury "to hear this cause." Mr. Terry responded by filing an answer and a counterclaim for unpaid attorney's fees. Mr. Terry did not request a jury trial on his counterclaim. Dr. Nagarajan filed a reply to Mr. Terry's counterclaim that did not include a demand for a jury trial on Mr. Terry's counterclaim.

The only remaining issue to be resolved after the trial court granted Mr. Terry's motion for summary judgment on May 21, 2001, was his claim for additional attorney's fees. On July 24, 2001, the trial court entered an order setting the case for trial on the "non-jury docket" on September 26, 2001. When the court continued the trial to enable the parties to mediate their dispute, its order reiterated that the case would "be placed back on the non-jury docket" if mediation failed. The case came on to be tried on December 9, 2002, without a jury but was continued until February 10, 2003, because Dr. Nagarajan had forced his lawyer to withdraw.

---

[7]Even though these proceedings were held in chambers, Dr. Nagarajan could have used his court reporter had he simply requested that the proceedings be transcribed. Because Dr. Nagarajan did not request that the proceedings in chambers be transcribed, he alone is responsible for the absence of a transcript of these proceedings from the record.

[8]Had the default judgment resolved all the claims between the parties, it would have been final and immediately appealable. *First Union Nat'l Bank v. Abercrombie*, No. M2001-01379-COA-R3-CV, 2003 WL 22251347, at *2 (Tenn. Ct. App. Oct. 2, 2003) (No Tenn. R. App. P. 11 application filed).

At some point apparently following December 9, 2002, Dr. Nagarajan renewed his demand for a jury trial, and the trial court apparently denied it.[9] Inexplicably, however, his lawyer did not orally renew his demand for a jury when the trial began on February 19, 2003. Instead, his lawyer announced that "we're prepared to proceed in whatever way your Honor wishes to proceed." The first mention of Dr. Nagarajan's renewed demand for a jury was made after the plaintiff had closed its case. After consulting with his client, Dr. Nagarajan's lawyer announced that "we believe that the Court is in error on the right to a jury" and, therefore, that "Mr. Nagarajan will not be testifying today."

## B.
### THE EFFECTIVENESS OF DR. NAGARAJAN'S JURY DEMAND

The right to a jury trial guaranteed by Tenn. Const. art. I, § 6 is one of the most valuable personal rights protected by the Constitution of Tennessee. *Harbison v. Briggs Bros. Paint Mfg. Co.*, 209 Tenn. 534, 540, 354 S.W.2d 464, 467 (1962); *State Bank v. Cooper*, 10 Tenn. (2 Yer.) 599, 604 (1831). In civil cases, however, the right is not self-enforcing.[10] A party who desires a jury trial must file and serve a timely demand for a jury in accordance with Tenn. R. Civ. P. 38.02. Parties who fail to comply with Tenn. R. Civ. P. 38 have not properly requested a jury trial and will be deemed to have waived their right to a jury trial. Tenn. R. Civ. P. 38.05; *Gribble v. Buckner*, 730 S.W.2d 630, 633 (Tenn. Ct. App. 1986).

Tenn. R. Civ. P. 38.02 provides that

> Any party may demand a trial by jury of any issue triable of right by jury by demanding the same in any pleading specified in Rule 7.01 or by endorsing the demand upon such pleading when it is filed, or by written demand filed with the clerk, with notice to all parties, within fifteen (15) days after the service of the last pleading raising an issue of fact.

Parties requesting a jury may specify the issues to be tried by the jury, but if they do not specify particular issues, their demand will be deemed to include all issues triable by a jury. Tenn. R. Civ. P. 38.04. Once a demand for a jury trial has been made, it cannot be withdrawn without the consent of all the parties as to whom the issues have been joined. Tenn. R. Civ. P. 38.05.[11] Trial courts may, in their discretion, order a trial by jury notwithstanding a party's failure to demand a jury in the interest of justice. Tenn. R. Civ. P. 39.02 & cmt.

---

[9]The appellate record does not reveal precisely when the renewed demand was made. In his February 18, 2003 memorandum supporting the renewed demand for a jury, Dr. Nagarajan "requests that this Court reverse is [sic] prior ruling and reinstate this cause on the jury docket."

[10]9 CHARLES A. WRIGHT & ARTHUR K. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2318, at 133 (2d ed. 1995) ("FEDERAL PRACTICE & PROCEDURE").

[11]This consent must take the form of either a written stipulation by the parties or their lawyers or by oral stipulation made in open court and entered in the record. Tenn. R. Civ. P. 39.01.

A timely, general demand for a jury that does not specify issues is regarded as a demand for a jury on all issues in the case. 9 FEDERAL PRACTICE & PROCEDURE § 2318, at 136; *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir. 1998).[12] Plaintiffs who have included a general jury demand in their complaint are entitled to a jury on all triable issues pertinent to their complaint, including issues raised in counterclaims. *Horwitz v. Alloy Automotive Co.*, 677 F. Supp. 564, 566 (N.D. Ill. 1988) (once a general jury demand has been asserted, a second demand need not be made after the filing of a counterclaim); *Ciaglo v. Fanning*, 300 N.W.2d 436, 438 (Mich. Ct. App. 1980).[13] Thus, plaintiffs who have included a general jury demand in their complaint are entitled to a jury on the triable issues raised in a defendant's counterclaim even if their complaint is dismissed. In a case strikingly similar to this one, the Supreme Court of Ohio held that a client who included a general jury demand in the malpractice complaint against her former lawyer was entitled to a jury trial on the lawyer's counterclaim for unpaid attorney's fees after her malpractice complaint had been dismissed. *Soler v. Evans, St. Clair & Kelsey*, 763 N.E.2d 1169, 1175 (Ohio 2002).[14]

The principles applied by the Supreme Court of Ohio in *Soler v. Evan, St. Clair & Kelsey* are applicable to this case. Dr. Nagarajan included a general jury demand in his complaint. Mr. Terry's counterclaim for attorney's fees was a compulsory counterclaim because it arose out of the same transaction that gave rise to Dr. Nagarajan's complaint. Tenn. R. Civ. P. 13.01.[15] The triable issues in the complaint and counterclaim were inextricably intertwined because Mr. Terry could have potentially forfeited all or part of his fee if he had committed malpractice and if his malpractice had damaged Dr. Nagarajan.[16] Accordingly, Dr. Nagarajan's general demand for a jury in his complaint survived the dismissal of his malpractice complaint against Mr. Terry.

## C.
### DR. NAGARAJAN'S WAIVER OF HIS RIGHT TO A JURY TRIAL

Determining that Dr. Nagarajan's jury demand survived the dismissal of his complaint does not end our inquiry. Dr. Nagarajan would not have been entitled to a jury at either the February 10

---

[12] Because of the similarities between Tenn. R. Civ. P. 38 and Fed. R. Civ. P. 38, the decisions of the federal courts construing Fed. R. Civ. P. 38 provide us with helpful guidance in our interpretation and application of Tenn. R. Civ. P. 38. Decisions of the federal courts construing analogous federal rules of procedure can provide helpful guidance in interpreting our own rules. *Frazier v. East Tenn. Baptist Hosp.*, 55 S.W.3d 925, 928 (Tenn. 2001); *Harris v. Chern*, 33 S.W.3d 741, 745 n.2 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 211 n. 2 (Tenn. 1993); *Pacific Eastern Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 952 n.7 (Tenn. Ct. App. 1995).

[13] Commentators have advised that careful practitioners can avoid the predicament facing Dr. Nagarajan in this case by filing a timely demand for a jury following the filing of a counterclaim. 5 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 38.39[2], at 38-369 (2d ed 1995).

[14] Another court reached a different result on similar facts because the plaintiff's jury demand was limited to "each and every count of the complaint." *Mt. Everest Ski Shops, Inc. v. Ski Barn, Inc.*, 736 F. Supp. 531, 532 (D. Vt. 1989).

[15] A lawyer's claims for unpaid attorney's fees are compulsory counterclaims in a client's legal malpractice action. *First Am. Trust Co. v. Franklin-Murray Dev. Co.*, 59 S.W.3d 135, 139-40 (Tenn. Ct. App. 2001); *see also Starks v. Browning*, 20 S.W.3d 645, 652-53 (Tenn. Ct. App. 1999).

[16] *Crawford v. Logan*, 656 S.W.2d 360, 364-65 (Tenn. 1983).

or 19, 2003 hearings if he effectively waived his right to a jury sometime between the filing of his complaint and the date of the trial. We have determined that the record clearly demonstrates that Dr. Nagarajan waived his right to a jury trial.

Jury demands are not irrevocable. Litigants who have requested a jury may subsequently waive their right to a jury with the "consent of all parties as to whom issues have been joined." Tenn. R. Civ. P. 38.05. This waiver may be explicit or by implication. *Russell v. Hackett*, 190 Tenn. 381, 383, 230 S.W.2d 191, 192 (1950); *Beal v. Doe*, 987 S.W.2d 41, 47 (Tenn. Ct. App. 1998); *Davis v. Ballard*, 946 S.W.2d 816, 817 (Tenn. Ct. App. 1996). Courts, however, should indulge in every reasonable presumption against waiver of a jury demand in a civil case. *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393, 57 S. Ct. 809, 812 (1937). A waiver should not be inferred without reasonably clear evidence of an intent to waive. *L & R Realty v. Connecticut Nat'l Bank*, 715 A.2d 748, 753 (Conn. 1998). Therefore, when doubt exists, a court should not find that a party who requested a jury waived its right. *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 645 (1st Cir. 2000); *Lovelace v. Dall*, 820 F.2d 223, 227-28 (7th Cir. 1987); *American Standard, Inc. v. Crane Co.*, 60 F.R.D. 35, 42-43 (S.D.N.Y. 1973).

The record reflects that Dr. Nagarajan explicitly waived his right to a jury trial on Mr. Terry's counterclaim. Following the entry of the summary judgment dismissing Dr. Nagarajan's claim, Mr. Terry filed a motion requesting a non-jury trial. The record contains no indication that Dr. Nagarajan, who was representing himself at the time, objected to the request for a non-jury trial. Accordingly, on July 24, 2001, the trial court filed an order setting the case for a non-jury trial on September 26, 2001. Thereafter, Dr. Nagarajan retained counsel, and the parties agreed to continue the trial to engage in mediation. The October 18, 2001 agreed order continuing the trial directs the parties to "inform the Court whether or not this matter should be placed back on the non-jury docket" should mediation fail. The entry of the October 18, 2001 order acknowledging that the case was on the court's non-jury docket supplies clear evidence that all the parties had consented at that point to try the case without a jury. *Sewell v. Jefferson County Fiscal Court*, 863 F.2d 461, 464-65 (6th Cir. 1988) (failure to object to an order scheduling a case on the non-jury docket implies consent to a non-jury trial).

As far as the record shows, no other mention of a jury was made prior to the February 10, 2003 trial when the trial court granted Mr. Terry a default judgment with regard to Dr. Nagarajan's liability for additional attorney's fees. The first mention of a jury trial came in a brief filed with the court on February 18, 2003, in support of Dr. Nagarajan's "renewed demand" for a jury. Notwithstanding this brief, neither Dr. Nagarajan nor his lawyer requested a jury at the beginning of the proceeding on February 19, 2003. The subject of a jury was not mentioned until Mr. Terry closed his case.

There are substantial questions about the efficacy and timeliness of Dr. Nagarajan's renewed request for a jury. However, even if we assume that his request was timely, Dr. Nagarajan again waived his right to a jury trial when neither he nor his lawyer requested a jury at the beginning of the

hearing on February 19, 2003.[17]  Clearly, broaching the subject of a jury after the close of Mr. Terry's case was untimely, and the trial court cannot be faulted for declining to start the proceedings anew and grant Dr. Nagarajan a jury trial pursuant to Tenn. R. Civ. P. 39.02.

## V.
### CONSIDERATION OF THE AFFIDAVIT OF MR. TERRY'S EXPERT

As a final matter, Dr. Nagarajan takes issue with the trial court's decision to admit and consider the affidavit of Charles R. Ray regarding the reasonableness of Mr. Terry's claim for attorney's fees.  He asserts that the trial court's decision to admit the affidavit deprived him of his opportunity to cross-examine Mr. Ray.  We have determined that the trial court erred by admitting Mr. Ray's affidavit into evidence over Dr. Nagarajan's objection.  However, we have also determined that the admission of the affidavit was harmless because it did not affect the judgment.

In an agreed scheduling order filed on May 14, 2002, the trial court directed the parties to disclose their expert witness and exchange their expert witness statements by August 1, 2002.  On August 22, 2002, Mr. Terry disclosed that he intended to call Charles R. Ray as an expert witness and provided a summary of Mr. Ray's testimony regarding Mr. Terry's entitlement to an additional fee, the reasonableness of his requested fee, and the value of his services to Dr. Nagarajan.  On the same day, Dr. Nagarajan filed a motion in limine seeking to exclude Mr. Ray's testimony because it was (1) irrelevant, (2) contrary to the decision of the United States District Court in the Title VII proceeding, and (3) "[c]onfusing, [m]isleading, and a [w]aste of the [c]ourt's time."  Despite extensive briefing and supplemental briefing by the parties, the record contains no indication that the trial court ever ruled on the motion in limine.[18]

On February 18, 2003, the day before the final hearing, Mr. Terry filed two affidavits with the court – his affidavit and that of Mr. Ray.  Mr. Ray's affidavit stated that Mr. Terry was entitled to $113,989.86 and that Mr. Terry's request for $53,884.86 was "very favorable" to Dr. Nagarajan.  After he testified at the February 19, 2003 hearing, Mr. Terry tendered Mr. Ray's affidavit to the court explaining that Mr. Ray would have been available to testify had the case been tried either on December 9, 2002 or February 10, 2003, but that he was unavailable to testify on February 19, 2003.  Dr. Nagarajan's lawyer objected to the affidavit on the ground that it would deprive him of his opportunity to cross-examine Mr. Ray.  The trial court overruled the objection and admitted the affidavit.

As a general matter, evidence introduced at trial takes the form of testimony of live witnesses who are subject to cross-examination, depositions of unavailable witnesses who have been available for cross-examination, and properly authenticated exhibits.  The Tennessee Rules of Civil Procedure do not provide for the use of affidavits as evidence at trial except by consent.  *Botts v. Botts*, Obion Eq. No. 6, 1990 WL 183742, at *7 (Tenn. Ct. App. Nov. 29, 1990) *perm. app. denied* (Tenn. May 6, 1991); *Turner v. Turner*, 776 S.W.2d 88, 90 (Tenn. Ct. App. 1988).  With regard to requests for

---

[17]Allowing a non-jury trial to proceed without objection is sufficient to imply a party's consent to a trial without a jury.  *Russell v. Hackett*, 190 Tenn. at 384, 230 S.W.2d at 192; *see also Front v. Lane*, 443 N.E.2d 95, 97 (Ind. Ct. App. 1982).

[18]There is likewise no indication that the parties attempted to depose Mr. Ray.

attorney's fees, however, it has become commonplace to use affidavits and counter-affidavits to try issues regarding the reasonableness of a requested fee. In these circumstances, the parties either have not objected to the use of affidavits because they have had sufficient opportunity to prepare and submit counter-affidavits or the affiant has been reasonably available for cross-examination. *Fain v. Fain*, No. M1999-02261-COA-R3-CV, 2000 WL 1879548, at *6 (Tenn. Ct. App. Dec. 29, 2000) (No Tenn. R. App. P. 11 application filed) (affidavit admissible because the opposing party did not request cross-examination); *Sommerville v. Sommerville*, No. 01A01-9710-CV-00559, 1998 WL 792050, at *5 (Tenn. Ct. App. Nov. 16, 1998) (No Tenn. R. App. P. 11 application filed) (opposing party had an opportunity for cross-examination); *Jones v. Mankin*, No. 88-263-II, 1989 WL 44924, at *10 (Tenn. Ct. App. May 5, 1989) (No Tenn. R. App. P. 11 application filed) (affidavit admissible where opposing party did not request opportunity to put on proof or to depose the affiant).

It is, no doubt, true that Dr. Nagarajan had known since August 2002 that Mr. Terry intended to use Mr. Ray's testimony to support his claim for attorney's fees. However, it is also true that until February 18, 2003, Dr. Nagarajan reasonably understood that Mr. Ray would be testifying in person and, therefore, subject to cross-examination. Thus, Dr. Nagarajan and his lawyer could reasonably have decided to attempt to undermine Mr. Ray's testimony by cross-examination rather than by generating counter-affidavits. When they discovered on the day before trial that Mr. Ray would not be testifying, they did not have reasonable time either to depose him or to obtain counter-affidavits. Therefore, the trial court erred by admitting Mr. Ray's affidavit over Dr. Nagarajan's objection.

Parties are not entitled to a reversal of a judgment based on an error that, more probably than not, did not affect the outcome of the trial. Tenn. R. App. P. 36(b). Thus, errors either in admitting or excluding evidence may be found to be harmless. *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 500-01 (Tenn. Ct. App. 2000). We have determined that the trial court's erroneous admission of Mr. Ray's affidavit did not affect its judgment. Mr. Ray opined that Mr. Terry was entitled to $113,989.86 in additional attorney's fees. However, the trial court awarded Mr. Terry $53,884.86 – precisely the amount he requested. Accordingly, Mr. Ray's opinion did not influence the trial court's decision.

## VI.

We affirm the judgment and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Govindaswamy Nagarajan for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., J.

-11-