IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 6, 2021 Session

## CAROLYN PAYNE v. MAXINE BRADLEY

**Appeal from the Circuit Court for Davidson County**
**No. 15C-4554        Kelvin D. Jones, Judge**
_____

**No. M2019-01453-COA-R3-CV**
_____

Sisters filed counter-complaints related to the enforcement of a written contract. The trial court ruled that the contract was missing an essential term and therefore could not be enforced. The trial court, however, awarded the plaintiff a judgment in quantum meruit. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Tusca R. S. Alexis, Nashville, Tennessee, for the appellant, Carolyn Payne.

Kathleen R. Redpath, Hendersonville, Tennessee, for the appellee, Maxine Bradley.

### OPINION

#### PROCEDURAL AND FACTUAL BACKGROUND

The underlying lawsuit has its genesis in another lawsuit. Specifically, Defendant/Appellee Maxine Bradley was deeded a home in Hermitage, Tennessee by her sister Nancy O. Cockerill, known as the Tulip Grove Property. Ms. Cockerill thereafter died. Ms. Cockerill's son contested the validity of the deed in a quiet title action filed against Ms. Bradley in Davidson County Chancery Court ("the chancery court action"). Around November 2012, Ms. Bradley contacted her other sister, Plaintiff/Appellant Carolyn Payne, for help with the expenses related to the chancery court action. Eventually, on March 3, 2013, Ms. Bradley and Ms. Payne entered into a written agreement drafted by the attorney representing Ms. Bradley in the chancery court action. The agreement

provided as follows:

> This agreement is made between [Ms.] Bradley and [Ms.] Payne regarding a certain lawsuit pending concerning real property located at 632 Tulip Grove Road, Hermitage, Tennessee.
>
> The parties have agreed to share equally the costs of pursuing the lawsuit [] in Chancery Court of Davidson County, Tennessee under docket number 12-1391-I. The parties further agree that they will share in any and all expenses of the real property including property taxes and upkeep and all expenses associated therewith. The parties agree that at the conclusion of the lawsuit the property will be deeded in the name of [Ms.] Bradley and [Ms.] Payne. If [Ms.] Payne fails to pay her share of expenses and costs and upkeep of the property and or taxes, then [Ms.] Bradley will not be required to deed one-half of the property to [Ms.] Payne.

Pursuant to the parties' agreement, Ms. Payne made some undisputed payments toward expenses, including (1) a $400.00 payment prior to the execution of the March contract in December 2012 related to attorney's expenses; (2) a $250.00 payment in March 2013 directly to Ms. Bradley's attorney; (3) another payment in March 2013 for $850.00 to Ms. Bradley; (4) a $225.00 payment in April 2013 for a document examiner; and (5) another April 2013 check in the amount of $250.00 to Ms. Bradley's initial attorney.

No further payments were made between May 2013 and February 5, 2015, when the chancellor entered a written order in Ms. Bradley's favor in the chancery court action. Ms. Payne thereafter attempted to make additional payments to Ms. Bradley, but Ms. Bradley refused to accept the payments and further refused to deed one-half of the Tulip Grove Property to Ms. Payne under the contract.

On November 19, 2015, Ms. Payne filed a pro se civil warrant in Davidson County General Sessions Court ("general sessions court"). The civil warrant sought damages for breach of contract and in quantum meruit. On November 30, 2015, Ms. Payne, now represented by counsel, filed a motion to transfer the matter to circuit court because her claim for an interest in real property exceeded the jurisdictional limit of general sessions court. The general sessions court entered an order on December 17, 2015, transferring the matter to the Davidson County Circuit Court ("the trial court").

On March 23, 2016, Ms. Payne filed a verified complaint against Ms. Bradley, alleging breach of contract, specific performance, and constructive trust. Ms. Payne asserted that she made payments to Ms. Bradley upon request, some of which Ms. Bradley refused to accept; that, in December 2014, Ms. Bradley stopped informing her of the costs incurred in the lawsuit and stopped accepting payments from her to assist in the costs of the action; and that, after Ms. Bradley was successful in defending the suit, she refused to convey title to the Tulip Grove Property to Ms. Payne. Ms. Payne asserted that she had

complied with the terms of the agreement entered into with Ms. Bradley, except to the extent that Ms. Bradley prevented her from doing so, and, as such, requested the trial court to enforce the agreement and require Ms. Bradley to convey her "undivided one-half interest in the real property as a tenant in common."[1]

On April 29, 2016, Ms. Bradley filed an answer and counterclaim. Therein, Ms. Bradley admitted that she asked Ms. Payne for financial assistance in March 2013 and that she received some payments from her; that Ms. Payne accompanied her to court hearings and engaged in phone conversations related to the previous litigation; and that she did not accept any payments from Ms. Payne after November 6, 2015. However, she denied that the contract between the parties was enforceable because "it lack[ed] essential terms," Ms. Payne failed to satisfy the condition precedent, to share in any and all expenses related to the previous lawsuit, and the contract did not "encompass[] the agreement of the parties."[2] Ms. Bradley asserted ten defenses: failure to state a claim, fraud, lack of consideration, estoppel, breach of good faith and fair dealing, unclean hands, failure to satisfy a condition precedent, frustration of purpose, breach of contract, and failure to state a claim for constructive trust; and counterclaimed, asserting "fraud in the inducement" and promissory fraud.[3] As to her counterclaim, Ms. Bradley requested both compensatory and punitive damages.[4] Ms. Payne denied the allegations set forth in Ms. Bradley's defenses and counterclaim, and asserted thirty-two affirmative defenses.

After the trial court entered a case management and scheduling order on October 29, 2018, Ms. Payne filed a motion to continue trial and set a new scheduling order on June 11, 2019; she asserted that she was unrepresented at the time the scheduling order was entered, and that her new counsel had determined that she was not prepared to proceed with the trial. Ms. Payne also stated that the trial court's failure to grant her motion to continue would be prejudicial to her case. No order on this motion is contained in the record; however, there is no dispute that the motion was not granted. Ms. Payne filed a second motion to continue on the day the trial was scheduled to commence, July 8, 2019; the court heard the motion on the day of trial and orally denied the motion. A written order was entered denying the motion on November 26, 2019.

---

[1] Ms. Payne also requested that the trial court "impose a constructive trust" to protect her one-half interest, "decree the disgorgement of those funds" Ms. Bradley acquired by leasing the real property, and award her compensatory and punitive damages, as well as pre- and post-judgment interest and attorney's fees.

[2] Ms. Bradley recognized in her answer that these contentions were somewhat contradictory, but noted that while her central contention was that "there is no enforceable contract" she was pleading the other "defenses in the alternative."

[3] On May 28, 2019, the trial court granted Ms. Bradley's motion to file an amended answer to assert two additional defenses: unconscionability and anticipatory breach.

[4] These claims were abandoned, as the trial court did not award Ms. Bradley any damages and Ms. Bradley raises no issue with regard to that ruling on appeal.

The trial took place as scheduled on July 8, 2019. Only the parties testified.[5] Ms. Payne asserted that she made all payments requested by Ms. Bradley. In particular, Ms. Payne testified that even though she was aware that Ms. Bradley had hired different counsel mid-way through the chancery court action, she understood that no moneys were due, as the attorney would receive his fee from the plaintiff in the chancery court action. Ms. Payne said she was under a similar understanding with regard to court reporter expenses. Ms. Payne testified that it was only after the trial in the chancery court action that she learned there were additional expenses, related both to the chancery court action and the Tulip Grove Property itself. As a result, Ms. Payne testified that she sent a notarized letter and a check to Ms. Bradley for one-half the litigation costs in the amount of $2,204.50 on February 13, 2015. Ms. Payne testified that the letter was delivered to Ms. Bradley's home, but Ms. Bradley claimed she did not receive the check and that even more money was owed. As such, on or about March 11, 2015, Ms. Payne sent two checks to Ms. Bradley: (1) a check for $2,204.50 to replace the earlier check that Ms. Bradley claimed had not arrived; and (2) a $1,212.80 check for the additional Tulip Grove Property expenses that Ms. Bradley claimed. Ms. Bradley received the March 2015 checks, but she undisputedly refused to cash them.

In contrast, Ms. Bradley asserted that she continually asked for additional payments for the chancery court action and house expenses as they came due, but Ms. Payne shirked her duty to make payments for years. In particular, Ms. Bradley noted that she paid $2,500.00 to her second attorney and that there was no discussion with the attorney that he would be paid by a third-party or at the conclusion of the litigation. Ms. Bradley testified that she asked Ms. Payne to contribute to that expense immediately upon incurring it, but was rebuffed. Likewise, Ms. Bradley testified that although Ms. Payne was present during the trial of the chancery court action and overheard both Ms. Bradley's attorney's request that Ms. Bradley pay the court reporter and Ms. Bradley's response that she could not, Ms. Payne made no offer to help with that expense. Additionally, Ms. Bradley testified that there were ongoing expenses related to the Tulip Grove Property, such as property taxes and insurance, that she asked Ms. Payne to pay every month.[6] According to Ms. Bradley, Ms. Payne only attempted to pay the additional outstanding expenses after the conclusion of the chancery court action. Ms. Bradley asserted, however, that the contract should be interpreted to require payment upon bills coming due, as the purpose of the contract was to prevent Ms. Bradley from having to dip into her savings in defense of the chancery court action. Although Ms. Bradley admitted that she received certified letters that included Ms. Payne's March 2015 checks following the conclusion of the chancery court action, she refused to cash the checks because she believed that Ms. Payne had already breached the

---

[5] Ms. Bradley's initial attorney in the chancery court action was also called to testify, but Ms. Bradley declined to waive the attorney client privilege and he was not permitted to testify to any substantive matters.

[6] There was some dispute at trial as to what additional expenses Ms. Bradley actually incurred, as it appears that Ms. Cockrill paid some of the expenses prior to her death and her son may also have paid a portion of the expenses during the pendency of the chancery court action.

parties' contract by that time. As such, when the chancery court action was concluded, Ms. Bradley refused to deed a one-half interest in the Tulip Grove Property to Ms. Payne.

The trial court entered a written order on July 18, 2020. Therein, the trial court found that it was undisputed that Ms. Payne paid her share of the expenses from December 8, 2012, to April 13, 2013, but that no payments were received after that date until the conclusion of the chancery court action. After reciting the applicable law on this subject, however, the trial court ruled that the contract omitted an essential term and was therefore unenforceable:

> In this case, the Agreement entered into between the parties clearly identifies the parties and subject matter of the agreement. It also specifies the exact size of the property interest to be conveyed by [Ms. Bradley] to [Ms. Payne] upon [Ms. Payne's] performance. However, the Agreement fails to establish any type of payment schedule. The parties disagree as to when payments were to be made pursuant to the Agreement. [Ms. Payne] testified that she had until the conclusion of the Chancery Suit to make payment. [Ms. Bradley] testified that the Agreement required [Ms. Payne] to pay expenses as those expenses arose. As such, this Court is unable to determine whether Plaintiff was expected to contribute payments during the lawsuit, or whether the Agreement permits her to remit payment to [Ms. Bradley] at the conclusion of the Chancery Suit. This discrepancy prevents this Court from determining whether or not [Ms. Payne] breached the agreement. Thus, this Court finds that a payment schedule is an essential element of the parties' agreement. Without this essential element, this Court finds that the Agreement is too indefinite and therefore unenforceable.

The trial court found, however, that Ms. Bradley was unjustly enriched by Ms. Payne's monetary contributions, and ordered Ms. Bradley to pay Ms. Payne $1,975.00, representing all payments made by Ms. Payne and accepted by Ms. Bradley. Ms. Payne thereafter appealed to this Court.

## ISSUES PRESENTED

Ms. Payne raises the following issues in her brief, which we slightly restate and reorder:

1. Whether the trial court erred in denying Ms. Payne's motion to continue.

2. Whether the trial court erred when it found that there was no breach of the agreement and that Ms. Payne was not entitled to specific performance.

In contrast, Ms. Bradley argues that Ms. Payne's arguments on appeal are waived and that

she is entitled to attorney's fees incurred in defending against a frivolous appeal.[7]

## DISCUSSION

### I.

We begin with Ms. Payne's argument that the trial court erred in denying her motion to continue trial. A trial court's decision to deny a motion to continue is reviewed under the abuse of discretion standard. *See In re A'Mari B.*, 358 S.W.3d 204, 213 (Tenn. Ct. App. 2011) (motions to continue reviewed under an abuse of discretion standard). As our supreme court has explained:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the court below, or to substitute their discretion for the lower court's. The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.
>
> Discretionary decisions must take the applicable law and relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (internal citations omitted).

In the specific context of a motion to continue, the following guidance is helpful:

> Decisions regarding continuances are fact-specific. Accordingly, motions for a continuance should be viewed in the context of all the circumstances existing when the motion is filed. Among the factors that courts consider are: (1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted.

---

[7] Ms. Bradley does not contend that the trial court erred in awarding Ms. Payne relief in quantum meruit.

***Nagarajan v. Terry***, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003) (footnotes omitted). The party seeking a continuance must show that the circumstances justify the continuance. ***Osagie v. Peakload Temporary Services***, 91 S.W.3d 326, 329 (Tenn. Ct. App. 2002). In order to meet this burden, the moving party must supply some "strong excuse" for postponing the trial date. ***Barber & McMurry, Inc. v. Top-Flite Development Corp. Inc.***, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986) (citing ***Levitt & Co. v. Kriger***, 6 Tenn. App. 323 (Tenn. Ct. App. 1927)).

In this case, Ms. Payne's motion to continue was based on her delay in retaining counsel after having been proceeding pro se for several months. The trial court's November 2019 order denying the continuance noted, however, that the case had been pending for some time and that Ms. Payne had continually insisted that trial occur in a timely manner. The order further stated that the same basis was cited to deny the prior motion to continue.[8]

We discern no abuse of discretion in the trial court's ruling. By the time of the first motion to continue, this case had been pending for over three-and-a-half years. ***Nagarajan***, 151 S.W.3d at 172 (considering the length of time the proceeding had been pending). Moreover, when Ms. Payne's first counsel was allowed to withdraw in August 2018, Ms. Payne asserted that she needed sixty days to retain new counsel; although the trial court only allowed Ms. Payne thirty days to employ counsel, Ms. Payne initially decided to proceed pro se and did not retain her current counsel for another ten months. ***Id.*** (considering the reason for the continuance and the diligence of the party seeking the continuance). According to the trial court, during that time of self-representation, Ms. Payne insisted that she wanted a timely trial. Although Ms. Payne asserts in her brief that she was unable to conduct meaningful discovery being a lay person, Ms. Payne chose to wait until the eleventh hour to retain counsel. "[E]xcept in the rarest and most exceptional circumstances, [pro se litigants] cannot be permitted to . . . avoid the risks of failure to attend [their] decision to forego legal assistance." ***Irvin v. City of Clarksville***, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988) (quoting ***Dozier v. Ford Motor Co.***, 702 F.2d 1189, 1194 (D.C. Cir. 1983)). Moreover, she has not shown in her appellate brief what specific documents were needed or how they would have affected the trial. ***Nagarajan***, 151 S.W.3d at 172 (considering the prejudice to the requesting party); *see also* Tenn. R. App. P. 36 ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). Under these circumstances, we cannot conclude that the trial court abused its

---

[8] There is some dispute as to whether the trial court or a special master denied this first motion to continue. The trial court's November 2019 order states that it was denied by the trial court in a case management conference call, and Ms. Payne has submitted no evidence, such as a transcript from that call, to undermine the trial court's statement. Moreover, the question of who denied the motion is largely irrelevant given the trial court's order addressing both motions and Ms. Payne's failure to show that the denial of her request to continue the case was an abuse of discretion, as detailed *infra*.

discretion in denying Ms. Payne a continuance.

## II.

We next consider the trial court's ruling that the contract was unenforceable. As the trial court correctly recognized, "[i]n order to enforce a contract in Tennessee, the contract must result from a meeting of the minds, must be based upon sufficient consideration, and must be sufficiently definite to be enforced." *Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991) (citing *Johnson v. Central National Insurance Co. of Omaha*, 210 Tenn. 24, 34–35, 356 S.W.2d 277, 281 (Tenn. 1962)). "Indefiniteness as to any essential element of an agreement may prevent the creation of an enforceable contract." *Id.* (citing *Jamestowne on Signal, Inc. v. First Federal Savings and Loan Ass'n.*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990)). Stated another way, "[i]f the essential terms of an alleged agreement are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Peoples Bank of Elk Valley*, 832 S.W.2d at 553–54. Therefore, a contract must be sufficiently explicit so a court can perceive the respective obligations of the parties." *Bridgeforth v. Jones*, No. M2013-01500-COA-R3-CV, 2015 WL 336376, at *11 (Tenn. Ct. App. Jan. 26, 2015) (citing *Doe v. HCA Health Servs. of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Jamestowne*, 807 S.W.2d at 564 (quoting Restatement (Second) of Contracts § 33(2) (1981)). "Moreover, the '[d]estruction of contracts because of uncertainty has never been favored by the law, and with the passage of time, such disfavor has only intensified.'" *Bridgeforth*, 2015 WL 336376, at *11 (quoting *Gurley v. King*, 183 S.W.3d 30, 34 (Tenn. Ct. App. 2005)). Generally, contract formation is a question of law that this court reviews de novo. *ICG Link, Inc. v. Steen*, 363 S.W.3d 533, 543 (Tenn. Ct. App. 2011).

As noted above, Ms. Payne designated as an issue on appeal that the trial court erred in declining to find a breach of the parties' contract and in refusing to award specific performance. Ms. Payne's argument on this issue is divided into four sections bearing the following titles: (1) The Contract; (2) Performance; (3) Breach; and (4) Specific Performance. With the exception of the Performance section of the argument, each argument section contains a recitation of the relevant general law on the subject. What none of the argument portion of Ms. Payne's brief contains, however, is references to the appellate record.[9] And Ms. Payne's brief contains little argument or authority responsive to the trial court's actual ruling.

Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure provides that an

---

[9] Other sections of Ms. Payne's brief, such as the facts section, do contain references to the record on appeal.

appellant's brief must contain an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on." According to the Tennessee Supreme Court, "[a]n issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012).

"This court has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal." *Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011); *see also McGarity v. Jerrolds*, 429 S.W.3d 562, 566 n.1 (Tenn. Ct. App. 2013) ("The failure to cite authority to support an argument on appeal constitutes a waiver of the issue."). "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010). "The adversarial system of justice is premised on the idea that 'appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.'" *Malmquist v. Malmquist*, No. W2007-02373-COA-R3-CV, 2011 WL 1087206, at *11 n.21 (Tenn. Ct. App. Mar. 25, 2011) (quoting *State v. Northern*, 262 S.W.3d 741, 767 (Tenn. 2008) (Holder, J., concurring in part and dissenting in part)). "[P]arties must thoroughly brief the issues they expect the appellate courts to consider." *Waters v. Farr*, 291 S.W.3d 873, 919 (Tenn. 2009). Based on these well-settled principles, this court has previously held that arguments were merely skeletal and therefore waived in similar situations.

For example, in *Biles v. Roby*, No. W2016-02139-COA-R3-CV, 2017 WL 3447910 (Tenn. Ct. App. Aug. 11, 2017), the trial court found that the nominee of the plaintiff's lender validly assigned a deed of trust. *Id.* at *5. On appeal, the plaintiff asserted that the deed of trust was "never effectively assigned[.]'" *Id.* We held, however, that this argument was waived. Importantly, the court noted that "[t]he only authority cited by [the plaintiffs] in support of their challenge to the assignment is the following statement in their brief: 'In *Collier v. Greenbrier Developers LLC*, 358 S.W.3d 195 (Tenn. Ct. App. 2009), the Tennessee Court of Appeals held that an assignee stands in the shoes of the assignor if there is an effective assignment.'" *Id.* The court concluded that this was "nothing more than a skeletal argument" and declined to address it. *Id.*

In another case, *Purifoy v. Mafa*, 556 S.W.3d 170 (Tenn. Ct. App. 2017), a similar problem arose with regard to defendant's due process argument. Specifically, the defendant argued on appeal that he was denied due process in several respects. *Id.* at 192. According to this court, the "'due process' section of [the defendant's] brief spans a total of seventeen

pages, but the only legal authority he cites *about due process* is the due process clause itself, which he quotes on one page." *Id.* We therefore held that the defendant's due process arguments were waived on appeal. *Id.*

Finally, in *Tennessee Firearms Ass'n v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2016-01782-COA-R3-CV, 2017 WL 2590209 (Tenn. Ct. App. June 15, 2017), we held that an argument was waived under similar circumstances:

> The trial court found that [a party] lacked standing because it had "no interest in Mr. Goodman's contracts with the Fair Board." The trial judge noted, "They can be an active cheering party all they want, but they are not qualified to stand as a party litigant in this lawsuit." On appeal, the plaintiffs maintain that [the party] has standing to challenge the Board's gun show ban. In their brief, they quote two sentences from *Hayes* [*v. City of Memphis*, No. W2014-01962-COA-R3-CV, 2015 WL 5000729, at *9 (Tenn. Ct. App. Aug. 21, 2015)]. One states that an organizational plaintiff may establish standing to sue for an injury to itself in its own right, and the other lists elements that organizational plaintiffs may alternatively show to establish standing to sue as a representative of its members with standing. However, the plaintiffs fail to analyze or explain how either type of standing was established by TFA under the facts of this case. They simply state, "Here, [TFA] has standing both in its own right and on behalf of its members arising out of the Fair Board's illegal termination of gun shows at the Nashville Fairgrounds that are attended by members of [TFA]."

*Id.* at *4 (footnote omitted). We therefore held that that was nothing more than a skeletal argument and thus waived that argument on appeal. *Id.*

The same is unfortunately true in this case. As previously discussed, the trial court ruled that Ms. Payne was not entitled to specific performance on the contract because the contract contained missing terms and it was therefore unenforceable. Ms. Payne correctly notes in her brief that in order to support a claim for specific performance on a contract involving realty, the contract "must be clear, complete and definite in all its essential terms." *Parsons v. Hall*, 184 Tenn. 363, 367, 199 S.W.2d 99, 100 (Tenn. 1947). Other than this assertion of law, however, Ms. Payne's appellate brief contains little argument to address the trial court's actual ruling. Rather, the only sentence in Appellant's brief responsive to the trial court's ruling is as follows: "The contract here is clear, complete and definite in all its essential terms and it show [sic] beyond doubt that the minds of the parties actually met." Other than the previous citation to *Parsons*, no law is cited for this specific proposition, nor is it supported by any reference to the appellate record. Moreover, the trial court did not rule only that specific performance on the contract was inappropriate, but that the contract was unenforceable due to indefiniteness regarding an essential term, citing *Doe*, 46 S.W.3d at 196 ("Indefiniteness regarding an essential element of a contract may

prevent the creation of an enforceable contract.") (quotation marks and citation omitted).[10] Likewise, Ms. Payne's brief contains no argument, skeletal or otherwise, is as to why the trial court erred in ruling that the contract was unenforceable due to a missing essential term regarding the timing of payments under the agreement.[11]

Thus, Ms. Payne contains, as best, only a skeletal argument actually addressing the very foundation of the trial court's ruling against her. In other words, Ms. Payne has not properly appealed the dispositive issue in this appeal. Respectfully, citing some caselaw tangentially related to this issue without any effort to actually "analyze or explain" why the trial court's ruling was in error falls far short of the requirements of Rule 27. ***Tennessee Firearms Ass'n***, 2017 WL 2590209, at *4. And while Ms. Payne's brief does contain a section concerning performance, her brief contains no argument or legal authority asserting that partial performance on the contract should be considered in determining whether a contract is too indefinite to be performed.[12] *Cf.* ***Gurley v. King***, 183 S.W.3d 30, 41–42 (Tenn. Ct. App. 2005) (citing authorities outside Tennessee) ("Partial performance by one side of the bargain may, by the specifics of that performance, cure an indefinite term of the agreement."). Instead, the bulk of Ms. Payne's legal analysis focuses on whether a breach of contract occurred—a question that is wholly irrelevant if the trial court correctly determined that no enforceable contract existed. In the absence of any proper argument to show that the trial court erred in its decision, we must affirm the trial court's decision that the contract omitted an essential term and could not be enforced. *See* ***State v. Weaver***, No. M2001-00873-CCA-R3-CD, 2003 WL 1877107, at *16 (Tenn. Crim. App. Apr. 15, 2003) ("[T]he burden of identifying issues for review on appeal and setting forth argument in support of those issues falls upon the appellant[.]").

### III.

As a final matter, Ms. Bradley requests an award of the attorney's fees she incurred

---

[10] Even if the trial court's ruling is interpreted as a refusal to order specific performance, the trial court's decision on that issue is reviewed for an abuse of discretion. *See* ***Sinclair Ref. Co. v. Martin***, 38 Tenn. App. 66, 76, 270 S.W.2d 576, 581 (Tenn. Ct. App. 1954). Ms. Payne's brief contains no argument concerning the effect of this narrow standard of review, nor has she raised an argument sufficient to show an abuse of the trial court's discretion.

[11] After being prompted by members of this Court at oral argument, counsel for Ms. Payne did argue that the agreement clearly provided that payments were due "upon completion of the case in the chancery court." Counsel later admitted, however, that this was not expressly stated in the contract. Moreover, counsel argued that the payment term could be supplied by the "conduct of the parties"; the parties' conduct at the beginning of the agreement, however, contradicts her argument, as payments were made far ahead of the completion of the chancery court action. In any event, oral argument is not a substitute for a properly briefed argument. *See* Tenn. R. App. P. 27(a) (stating that appellant's briefs "shall" contain the required argument, as detailed *supra*); *see also* ***Traylor v. State***, 332 Conn. 789, 810, 213 A.3d 467, 481 (2019) ("Raising a claim at oral argument is not, however, a substitute for adequately briefing that claim.").

[12] The Performance section of Ms. Payne's argument contains no legal authority whatsoever.

- 11 -

in defending against this appeal under Tennessee Code Annotated section 27-1-122. We have generally held that parties should not be forced to bear the cost and vexation of baseless appeals. ***Davis v. Gulf Ins. Group***, 546 S.W.2d 583, 586 (Tenn. 1977). As such, this statute provides that

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122.

A frivolous appeal is one in that is devoid of merit or has no reasonable chance of success. ***Robinson v. Currey***, 153 S.W.3d 32, 42 (Tenn. Ct. App. 2004). Although one of Ms. Payne's arguments was waived by her failure to properly brief the argument, she did raise another argument that, if successful, would have resulted in a new trial. As such, we decline to deem Ms. Payne's appeal frivolous or to award attorney's fees incurred in any portion of this appeal. All other issues are pretermitted.

## CONCLUSION

The judgment of the Davidson County Circuit Court is affirmed, and this cause is remanded for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant Carolyn Payne, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE