IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2013 Session

ESTATE OF MARY REEVES DAVIS, DECEASED

Appeal from the Circuit Court for Davidson County
No. 99P1955     David Randall Kennedy, Judge

No. M2012-00559-COA-R3-CV- Filed October 28, 2013

Decedent passed away in 1999, and Husband filed a petition for an elective share and a year's maintenance. Days before the trial was scheduled to begin in 2012 Husband discharged his attorneys and requested a continuance to find replacement counsel. The trial court permitted Husband's attorneys to withdraw but denied Husband's motion to continue. The trial court denied Husband's petition for an elective share because Husband had already received the bequest Decedent left him in her will. The trial court also denied Husband's request for a year of maintenance because Husband had transferred to himself over $250,000 from Decedent's accounts shortly before her death, and the amount Husband transferred to himself exceeded the amount Husband sought as maintenance. Husband appealed the trial court's judgment, and we affirm in all respects.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Christopher Robert Stanford, Manchester, Tennessee, for the appellant, William Terry Davis.

R. Horton Frank, Nashville, Tennessee, for the appellees, Lani Thomas Arnold, *et al.*

Ames Davis, Nashville, Tennessee, for the appellee, Ames Davis, Administrator C.T.A. of the Estate of Mary Reeves Davis.

OPINION

I. Background

Mary Reeves Davis ("Ms. Reeves Davis" or "Decedent") died in November 1999, and

the Estate of Mary Reeves Davis was opened the following month. The Decedent's will dating from 1976 was offered and later admitted to probate. The will included a bequest to the Decedent's husband, William Terry Davis, in the amount of $100,000. In August 2000 Mr. Davis filed a Petition for Elective Share, Year's Support, Homestead, and Exempt Property ("Petition for Elective Share").

While the Petition for Elective Share was pending, Mr. Davis filed a motion asking the court to authorize the administrator of the estate to pay him $100,000 pending further distribution of the estate. On February 1, 2001, the trial court issued an Order awarding Mr. Davis $50,000 "as an advancement against further distributions from the Estate." Mr. Davis then filed another motion in June 2001 seeking an additional payment of $50,000 from the estate. On July 26, 2001, the trial court issued a second Order awarding Mr. Davis another $50,000.

In its July Order, the court recognized that in her Last Will and Testament Ms. Davis designated Mr. Davis to receive $100,000. The court wrote: "[I]t is reasonable and appropriate to authorize payment of the sum of $50,000 to W. Terry Davis as an advancement which he may be obligated to refund to the Estate pending the outcome of matters relating to the Estate's administration and litigation." Thus, the court ordered the administrator to pay $50,000 to Mr. Davis "as an advancement or credit against any bequest or additional distribution, if any, the Court determines W. Terry Davis is entitled to receive from the Estate."

From July 2001 until January 2012 the parties litigated other estate issues including the interpretation of a trust instrument,[1] a claim for reimbursement against the estate,[2] the validity of an antenuptial agreement,[3] and a holographic will.[4] The trial court issued a scheduling order in October 2011 to address Mr. Davis's Petition for Elective Share. The court scheduled the trial to take place on January 23 and 24, 2012, and specified that the trial would not be continued "unless the party seeking a continuance demonstrates good cause for the continuance."

By letter dated January 18, 2012, five days before his trial was scheduled to begin, Mr. Davis terminated his attorneys' representation of him. Mr. Davis wrote:

---

[1] *Arnold v. Davis*, 2004 WL 1372831 (Tenn. Ct. App. Nov. 29, 2004).

[2] *Davis v. Davis*, 2004 WL 2951980 (Tenn. Ct. App. Dec. 17, 2004).

[3] *In re Estate of Mary Reeves Davis*, 213 S.W.3d 288 (Tenn. Ct. App. 2006).

[4] *In re Estate of Mary Reeves Davis*, 308 S.W.3d 832 (Tenn. 2010).

Dear John,

I have great regard for you as a person, and cherish our long standing friendship, but the time has come for our business relationship to end.

For some time now our thinking on the strategy, the tactics, and the contract have been irreconcilable.

With deep regrets do I take this action.

Yours sincerely,
Terry

On January 20, 2012, the trial court held a hearing to consider four pretrial motions: Mr. Davis's attorneys' motion to withdraw from representing Mr. Davis; Mr. Davis's motion to continue the trial to permit him to obtain replacement counsel in the event the court granted his attorneys' motion to withdraw; Mr. Davis's motion for the judge to recuse himself; and a motion to intervene filed by Mr. Davis's prior counsel who no longer represented him in this matter. The trial court granted Mr. Davis's attorneys' motion to withdraw and denied the three other motions.

The court set forth its ruling in open court at the conclusion of the hearing. With regard to Mr. Davis's attorneys' motion to withdraw and Mr. Davis's motion for a continuance, the court explained:

While the Court is concerned about the timeliness of Mr. Davis having submitted a letter to his attorneys after 12 years of - - as he pointed out, 12 years of litigation, this really goes back to the conservatorship in 1995. So it's really 16 years. After 16 years of this ever-evolving saga and having known that trial was set and having enlisted his sixth law firm to assist him and having them prepare for trial and to have him now elect to discharge counsel on the very eve of trial is certainly disappointing because it's always difficult for someone to represent themselves.

But Mr. Davis can't have it both ways. You can't say, well, I've decided that I don't want this lawyer who is my sixth law firm on the eve of trial and thereby gain the advantage of a continuance after the estate and the adversaries have already submitted their witness lists and, as pointed out by Mr. Frank, played their cards. It would be tantamount to being in the last go-round of a poker game and one side having laid all their cards down and the

other side saying well, I didn't like the five that were dealt me so I'm going to turn all five in and get a whole new hand.

But I understand the need for Mr. Price and Mr. Tidwell and Mr. Graves to be permitted to withdraw. . . . [T]his civil lawsuit that we have before us is one in which I believe is outside the Court's discretion to require Mr. Davis to have an attorney. So I'm going to grant the motion to withdraw by Messrs. Price, Tidwell and Graves inasmuch as they have been discharged by Mr. Davis pursuant to his letter to them of just two days ago. . . .

I am not going to continue this case because I signed a previous order in October wherein the Court clearly set forth that the only way in which this trial would be continued would be for good cause shown. And in all due fairness to everyone here, there has been no evidence presented to the Court, nor any legal argument presented that would suggest that that matter should not go ahead and reach some degree of finality after all this time. So that motion is also denied.

The motion to intervene was filed by three of Mr. Davis's former attorneys who had represented Mr. Davis at some point in the case and were still owed legal fees, a portion of which was based upon a contingency fee arrangement. These attorneys sought to intervene to protect their interest in their fees rather than an interest in the legal issues involved in the case. The court denied this motion, explaining:

The motion to intervene is a complicated one inasmuch as it seeks to allow previous lawyers who have provided services to Mr. Davis to step into the case and to proceed to make inquiry during the trial of this lawsuit. And while counsel for the proposed intervenors are incredibly persuasive in their argument regarding Rule 24, . . . the court is not persuaded by their advocacy that they are of rights when they ask the court to allow them to step in in this case. . . . I have been cited no Tennessee case . . . that in fact permits intervention for the sole and express purpose of protecting their attorneys' fees, however well earned they may be. So consequently the motion to intervene with respect to all movants is denied.[5]

The trial on Mr. Davis's request for an elective share and a year of maintenance

---

[5]The trial court also denied Mr. Davis's motion for recusal, which is not at issue on appeal.

-4-

began on January 23, 2012.[6] The court heard testimony and admitted documents over the course of four days before rendering its opinion denying each of Mr. Davis's requests. In its Order of Judgment, the trial court found facts and reached conclusions of law as follows:

1. Petitioner knowingly and with the advice of counsel sought and obtained his bequest of $100,000 pursuant to the provisions of the Will against which he elected to take his elective share.

2. One who elects to take under the Will is estopped to seek and obtain his elective share of the estate.

3. The Petitioner is therefore estopped to receive an elective share of the estate of Mary Reeves Davis.

4. Notwithstanding the Court's finding that the Petitioner is estopped to receive an elective share of the decedent's estate, and if the ruling of the Court on this ground is not sustained, the Court also finds in the alternative, that even if the Petitioner is not estopped to receive an elective share of the decedent's estate, the amount of his elective share of the net estate is exceeded by the amounts to be deducted from his elective share.

5. The Petitioner received his homestead allowance of $5,000.00 and his exempt property of $3,787.00 prior to the hearing on the Petition for Elective Share.

6. The Petitioner has obtained and received valuable assets from [the Decedent]'s estate during the period of time shortly prior to and up to her death.

7. Those valuable assets include more than $226,734.00 of [the Decedent]'s funds the Petitioner transferred from bank accounts of [the Decedent]'s and used for his benefit.

8. Based on the totality of circumstances, including the value of [the Decedent]'s assets that passed to Petitioner outside probate, the Court finds that Petitioner is not entitled to a year's support.

---

[6]Mr. Davis's request for his homestead allowance and exempt property had already been resolved by the time of this trial.

Mr. Davis filed a notice of appeal and alleges the trial court erred in the following ways: (1) permitting his attorney to withdraw from representing Mr. Davis at such a late stage in the proceeding while simultaneously denying Mr. Davis's request for a continuance to enable him to obtain replacement counsel; (2) denying Mr. Davis's former attorneys' joint motion to intervene; (3) ruling that Mr. Davis was estopped from receiving an elective share of Ms. Reeves Davis's estate; (4) ruling that Mr. Davis was not entitled to receive a year's maintenance; and (5) relying on inadmissible and insufficient evidence to conclude the Decedent's trust dated July 1996 was invalid and void *ab initio*, which Mr. Davis contends resulted in the court's denial of his request for an elective share.

## II. Analysis

### A. Motion for Leave to Withdraw and Motion for Continuance

In reviewing a trial court's decision to grant an attorney's motion to withdraw and to deny a party's motion for a continuance, an appellate court is to apply an abuse of discretion standard. This means that the trial court's ruling will be upheld so long as reasonable minds can disagree about the propriety of the decision made. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). "A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining. The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." *Id.* (citations and quotations omitted).

As the Court of Appeals explained in *Nagarajan v. Terry*, 151 S.W.3d 166 (Tenn. Ct. App. 2003):

> Trial courts have broad discretion over the course and conduct of trials. *State v. King*, 40 S.W.3d 442, 449 (Tenn. 2001); *Justice v. Sovran Bank*, 918 S.W.2d 428, 429–30 (Tenn. Ct. App. 1995); *Marress v. Carolina Direct Furniture, Inc.*, 785 S.W.2d 121, 129 (Tenn. Ct. App. 1989). This discretion extends to decisions regarding motions for a continuance. *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997). Accordingly, the appellate courts should not second guess a trial court's decision on a motion for a continuance unless the record, reviewed as a whole, shows a clear abuse of discretion or that a clear prejudicial error has been committed. *Blake*, 952 S.W.2d at 415; *Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 775 (Tenn. Ct. App. 2001); *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 175 (Tenn. Ct. App. 2001).

*Nagarajan*, 151 S.W.3d at 172.

Mr. Davis argues the trial court abused its discretion when it permitted his attorneys to withdraw from representing him at trial and relies on Rule 1.16(b)(1) of the Tennessee Supreme Court's Rules of Professional Conduct for his argument. Rule 1.16(b)(1) provides that a lawyer "may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client." Tenn. Sup. Ct. R. 8, RPC 1.16(b)(1).

Whereas Rule 1.16(b) governs permissive withdrawal, Rule 1.16(a) addresses mandatory withdrawal. Rule 1.16(a)(3) provides that where representation of a client has commenced, a lawyer "*shall* withdraw from the representation of a client if the lawyer is discharged." Tenn. Sup. Ct. R. 8, RPC 1.16(a)(3) (emphasis added).

Mr. Davis ignores the fact that he discharged his attorneys when he sent John Price the handwritten letter dated January 18, just five days prior to the date his trial was scheduled to begin. There is no other way to interpret Mr. Davis's language that "the time has come for our business relationship to end" other than to find that Mr. Davis was discharging his attorneys.[7] Once they were discharged, Mr. Davis's attorneys were obligated by Rule 1.16(a)(3) to withdraw.

Considering the facts and the Rules of Professional Conduct governing an attorney's mandatory withdrawal, we conclude the trial court did not abuse its discretion in granting Mr. Davis's attorneys' motion to withdraw.

We turn next to Mr. Davis's argument that the trial court erred when it denied his motion to continue the trial to allow him time to find counsel to replace the lawyers he discharged. Mr. Davis filed his Motion for Continuance on the same day that he discharged his attorneys, January 18, 2012, which was five days before his trial was scheduled to begin.

> Decisions regarding continuances are fact-specific. Accordingly, motions for a continuance should be viewed in the context of all the circumstances existing when the motion is filed. Among the factors that courts consider are: (1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted.

*Nagarajan*, 151 S.W.3d at 172.

---

[7]Mr. Davis acknowledged in his Motion for Continuance that he terminated the services of his attorneys on January 18, 2012.

When Mr. Davis filed his Motion for Continuance in 2012, his Petition for Elective Share had been pending since 2000. The reason Mr. Davis gave for seeking a continuance was his desire to retain substitute counsel to replace attorneys he had just terminated because of "unresolvable differences." However, in his letter to Mr. Price, Mr. Davis indicated that "[f]or some time now our thinking on the strategy, the tactics, and the contract have been irreconcilable." This language suggests Mr. Davis was aware "for some time," certainly before January 18, that he and his attorneys had conflicting views about his case and that his attorneys may not present the case the way Mr. Davis wanted it presented to the court. Waiting five days before trial to discharge his attorneys and seek a continuance, however, does not support a finding that Mr. Davis acted diligently in seeking a continuance.

Finally, Mr. Davis fails to show he was prejudiced as a result of the court's denial of his motion. Unlike a criminal trial, a party in a civil suit has no right to the assistance of counsel. *See Knight v. Knight*, 11 S.W.3d 898, 900 (Tenn. Ct. App. 1999) (party to civil suit has no absolute right to counsel). Mr. Davis created the problem he complains of by terminating his attorneys so close to the start of his trial. He was not a victim of anyone else's actions over which he had no control.

In addition to the factors above, we note that the trial court stated in its Scheduling Order that it would continue this case only upon a showing of good cause. Mr. Davis has failed to demonstrate he had good cause to seek a continuance. We conclude Mr. Davis has failed to establish that the trial court abused its discretion when it denied his motion to continue the trial. Accordingly, we affirm the trial court's judgment denying Mr. Davis's motion.

## B. Motion for Leave to Intervene

Mr. Davis next argues the trial court erred when it denied his former attorneys' motion to intervene to protect their interest in collecting their fees. When the former attorneys filed their motion, Mr. Davis opposed the motion on the grounds that the proposed intervenors lacked standing to intervene. Then, once the trial court denied Mr. Davis's motion to continue the trial, Mr. Davis argued the trial court should have granted the would-be intervenors' motion.[8]

---

[8]The reason Mr. Davis argues the trial court should have granted his former attorneys' motion was so that his former attorneys could provide for him that which he deprived himself of having: legal representation at trial. If Mr. Davis had not discharged his trial counsel on the eve of trial, he would not have been interested in receiving legal advice from his former attorneys, whose only interest in the case was to collect their legal fees.

As Ms. Reeves Davis's heirs point out, Mr. Davis lacks standing to argue the trial court erred when it denied the non-party attorneys' motion to intervene because (1) the movants (would-be intervenors) did not appeal the trial court's judgment, and (2) Mr. Davis does not share the interest his former attorneys sought to protect by moving to intervene.

Standing is a judge made doctrine whereby courts refuse to consider the merits of a legal controversy when the party pursuing it is not properly situated to prosecute the action. *Garrison v. Stamps*, 109 S.W.3d 374, 377 (Tenn. Ct. App. 2003); *Mayhew v. Wilder*, 46 S.W.3d 760, 766-67 (Tenn. Ct. App. 2001) (same). That is the situation we have here. Mr. Davis's former attorneys who sought to intervene at trial did not file a notice of appeal, and they are not parties to this appeal. Mr. Davis is not properly situated to pursue their claim on their behalf. The only reason Mr. Davis's former attorneys wanted to intervene at trial was to share in any proceeds Mr. Davis was awarded to satisfy their claim for legal fees.[9] Mr. Davis and his former attorneys are opposed to one another on this issue. The intervenors, and not Mr. Davis, are therefore the only ones with standing to appeal the trial court's denial of their motion to intervene.

## C.    Elective Share

In his Petition for Elective Share, Mr. Davis sought the following:

> 7.   Under the circumstances, pursuant to TCA § 31-4-101, Petitioner herewith elects to take against the will of September 10, 1976, should it be admitted to probate. Petitioner reserves the right to take against any other will that may be admitted to probate if such will is not acceptable to him.

The Last Will and Testament of Mary White Reeves Davis, which was dated September 10, 1976, was admitted to probate in July 2001. Item Sixth provided as follows:

> I hereby give, devise and bequeath the sum of One Hundred Thousand ($100,000) Dollars to my husband, WILLIAM TERRY DAVIS, if he survives me.

A surviving spouse's right to receive an elective share is governed by statute. The statute entitled "Right to elective share" provides in relevant part:

> The surviving spouse of an intestate decedent who elects against taking an

---

[9]An attorney seeking to enforce a contractual right to a fee must normally file a separate proceeding against the client. *Borena v. Yellow Cab Metro, Inc.*, 342 S.W.3d 506, 510 (Tenn. Ct. App. 2010).

intestate share, or a surviving spouse **who elects against a decedent's will**, has a right of **election**, unless limited by subsection (c), to take an elective-share amount equal to the value of the decedent's net estate as defined in subsection (b), determined by the length of time the surviving spouse and the decedent were married to each other . . . .

Tenn. Code Ann. § 31-4-101(a)(1) (emphasis added).

The case law in Tennessee is unequivocal that a surviving spouse is precluded from obtaining an elective share if the spouse has already accepted benefits under the decedent spouse's will. The Court of Appeals has written:

> The doctrine of election "applies where one asserts conflicting rights to property, *i.e.*, claiming under the will and making a separate claim [such as that for an elective share] against the estate." *Elmore v. Covington*, 172 S.W.2d 809, 810-11 (Tenn. 1943). Tennessee has long recognized the "established rule in equity that a man shall not take any beneficial interest in a will, and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat, or in any way prevent, the full effect and operation of every part of the will[.]" *Williams v. Williams*, 83 Tenn. 438, 445 (1885) (internal quotation omitted).

*In re Estate of Sanderson*, 2002 WL 31423847, at *4 (Tenn. Ct. App. Oct. 28, 2002); *see In re Estate of Grass*, 2008 WL 2343068, at *11 (Tenn. Ct. App. June 4, 2008) ("doctrine of election requires a person to either accept a benefit under a will and adopt the whole contents of the instrument, conforming to all its provisions, or renounce the will and exercise rights inconsistent with the testator's intent").

In reviewing the trial court's rulings, this Court reviews findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006). Questions of law are reviewed *de novo* with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

Mr. Davis does not argue he should be entitled to take advantage of any bequests made to him under Ms. Reeves Davis's will while at the same time making an election against the will. Rather, he argues that the two $50,000 payments he received in 2001 should not be treated as advancements under the will with the effect of precluding him from receiving his elective share. Mr. Davis relies on the language the trial court used in its July 2001 Order that the $50,000 payment was "an advancement or credit against any bequest or

additional distribution, if any, the Court determines W. Terry Davis is entitled to receive from the Estate."[10]

We do not find Mr. Davis's argument convincing. In its July 2001 Order, the trial court based (and limited) its award to Mr. Davis on the amount Ms. Reeves Davis left him in her will. Before making the second $50,000 award to Mr. Davis, the trial court noted that it had "admitted to probate the Last Will and Testament of Mary Reeves Davis dated September 10, 1976, wherein Terry Davis is designated to receive a $100,000 bequest." Based on the terms of the 1976 will, the trial court found it "reasonable and appropriate to authorize payment of the sum of $50,000.00 to W. Terry Davis as an advancement," pending the resolution of other issues regarding Ms. Reeves Davis's estate.

It is clear to us from the language the trial court used in its February and July Orders that the two awards totaling $100,000 were meant to be early distributions of Ms. Reeves Davis's bequest to Mr. Davis. We also find that the terms of Mr. Davis's motions seeking the advancement of these funds support this interpretation. In his initial motion, Mr. Davis sought $100,000, which is the full amount his deceased wife left him in her will. Then, after receiving one-half of his bequest, Mr. Davis sought the other half of his bequest in his second motion. He did not request another $100,000 in his second motion, as he did initially. Understanding that he was entitled to receive only another $50,000 under the will, Mr. Davis requested no more than this amount in his second request for an advancement.

The evidence presented at trial does not preponderate against the trial court's finding that Mr. Davis knowingly and with the advice of counsel sought and obtained his bequest of $100,000 pursuant to the provisions of the Decedent's will against which he elected to take his elective share. Therefore, having already received the bequest Ms. Reeves Davis left him in her will, we affirm the trial court's ruling that Mr. Davis is estopped from now receiving an elective share pursuant to Tenn. Code Ann. § 31-4-101.

### D. Year of Maintenance Allowance

In his Petition for Elective Share, Mr. Davis asked the court to award him a year's maintenance:

9.     During the marriage, the decedent provided substantial financial support for Petitioner. Petitioner is applying for an allowance from the estate

_____

[10]The trial court used similar language in its February 2001 Order, wherein it awarded Mr. Davis $50,000 "as an advancement against further distributions from the Estate and the ruling on the question of the validity of the July 1996 Trust."

for his maintenance for a period of one year after the death of the decedent as provided in TCA § 30-2-102.

During trial Mr. Davis clarified his request and asked the court for $240,000 as a maintenance award. The relevant portion of Tenn. Code Ann. § 30-2-102 provides:

(a) In addition to the right to homestead, an elective share under title 31, chapter 4, and exempt property, the surviving spouse of an intestate, or a surviving spouse who elects to take against a decedent's will, is entitled to a reasonable allowance in money out of the estate for such surviving spouse's maintenance during the period of one (1) year after the death of the spouse, according to the surviving spouse's previous standard of living, taking into account the condition of the estate of the deceased spouse. The court may consider the totality of the circumstances in fixing the allowance authorized by this section, including assets that may have passed to the spouse outside probate.

We review the trial court's consideration of the totality of circumstances under an abuse of discretion standard. *In re Estate of Grass*, 2008 WL 2343068, at *22 (Tenn. Ct. App. June 4, 2008).

During the trial, Mr. Davis acknowledged that in May 1996 he arranged for Ms. Reeves Davis to execute a durable power of attorney naming Mr. Davis as her "true and lawful agent and attorney." Evidence was introduced that Mr. Davis used this power of attorney to transfer over $260,000 in cash from accounts that were in Ms. Reeves Davis's name, over which Mr. Davis had no signatory authority, to accounts over which Mr. Davis had signatory authority.[11] Mr. Davis used approximately $125,000 of this money to purchase a condominium in the name of Ms. Reeves Davis and himself that he would receive upon her death.[12] There was also evidence that Mr. Davis received over $393,000 in cash between November 1997 and November 1999 from an *inter vivos* trust Ms. Reeves Davis established in July 1996.

In discussing Mr. Davis's request for a year's maintenance, the trial court expressed the following at the end of the trial:

The Court further is persuaded that under the totality of the

---

[11]In at least one instance Mr. Davis added his name to an account that he did not have an ownership interest in before acquiring Ms. Reeves Davis's power of attorney.

[12]Ms. Reeves Davis was living in a nursing home when Mr. Davis purchased the condominium.

-12-

circumstances and given the amount of monies that [Mr. Davis] has already received, including the transfer of more than $226,734 from bank accounts to or for his own benefit that he had already received, that he is not entitled to receive any monies in the way of a year's support. . . . The Court has concluded that [Mr. Davis] is not entitled to a year of support because the Court has heard overwhelming evidence that Mr. Terry Davis received and obtained valuable assets from [Ms. Reeves Davis's] estate shortly prior to and up to her death.

The Court of Appeals reviewed the purpose of the year's maintenance statute in *Hall v. Jeffers*, 795 S.W.2d 135 (Tenn. Ct. App. 1990):

The present Tennessee statute says the surviving spouse "is entitled to a reasonable allowance in money out of the estate for his ... maintenance ... according to his ... previous standard of living...." The Court finds the word "maintenance" to be a key term here. The noun "maintenance" denotes "means of support or livelihood." American Heritage Dictionary of the English Language (1978). Thus, the purpose of the statute is to maintain a surviving spouse while giving him or her an opportunity to adjust to the loss of or decrease in a standard of living that was provided or contributed to significantly by the deceased spouse. The period of a year is allowed so that the surviving spouse will be preserved during the administration of the estate.

*Id*. at 138.

Mr. Davis does not dispute the trial court's finding that he obtained and received more than $226,734 from Ms. Reeves Davis's accounts. Instead, he disputes the trial court's finding that he used this money for his benefit. Mr. Davis argues the Reeves heirs are required to prove he used this money for his benefit to support the trial court's conclusion that he is not entitled to a year's support. Mr. Davis does not cite any support for this assertion, however, and we are not aware of any requirement that the Decedent's heirs prove the use to which Mr. Davis put the money he received from Ms. Reeves Davis's accounts outside of probate.

Mr. Davis asked the trial court to award him $240,000 as a year's maintenance. The trial court found, and Mr. Davis does not dispute, that he transferred to himself more than $226,734 shortly before Ms. Reeves Davis's death. That amount, in addition to the $393,000 Mr. Davis received from the 1996 *inter vivos* trust, far exceeds the $240,000 Mr. Davis requested as maintenance. We conclude the trial court did not abuse its discretion in rejecting

Mr. Davis's request for a year's maintenance pursuant to Tenn. Code Ann. § 30-2-102(a).[13]

### III. CONCLUSION

We affirm the trial court's judgment in its entirety. Costs of appeal are assessed against the appellant, William Terry Davis, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

---

[13]Mr. Davis also argues the trial court relied on testimony and evidence that was inadmissible and insufficient to support its ruling that the 1996 inter vivos trust was void *ab initio*. However, the 1996 trust was only relevant in this case to determine the value of Ms. Reeves Davis's estate in the event the trial court granted Mr. Davis's request for an elective share. Our affirmance of the trial court's judgment that Mr. Davis is not entitled to elect against Ms. Reeves Davis's will is based on his request for, and receipt of, the advance payment of the $100,000 bequest Ms. Reeves Davis left him in her will, not for any reason having to do with the 1996 trust. Therefore, the issue whether the trial court relied on inadmissible or insufficient evidence to determine whether the 1996 trust was valid is pretermitted.