IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 19, 2017 Session

**LEE PHAN v. TENNESSEE DEPARTMENT OF COMMERCE AND
INSURANCE**

**Appeal from the Chancery Court for Davidson County
No. 15-89-IV   Russell T. Perkins, Chancellor**

_____

**No. M2016-00612-COA-R3-CV**

_____

After a contested case hearing, an administrative law judge ("ALJ"), acting on behalf of the Tennessee Board of Cosmetology, revoked a cosmetologist's license based upon evidence that he had assisted in the procurement of reciprocity licenses in exchange for cash. The ALJ also assessed civil penalties against the cosmetologist in the amount of $20,000. The cosmetologist filed a request for judicial review, and the chancery court affirmed the decision of the ALJ. We have concluded that the ALJ's decision is supported by substantial and material evidence and that none of the grounds raised by the cosmetologist justify reversal under the deferential standard of review described in Tenn. Code Ann. § 4-5-322(h).

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Jackie Sharp, Jr., and Natalie R. Sharp, Nashville, Tennessee, for the appellant, Lee Phan.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; and R. Mitchell Porcello, Senior Counsel, for the appellee, Tennessee Department of Commerce and Insurance.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Lee Phan held a cosmetology license issued by the Tennessee Board of Cosmetology ("the Board"), part of the Tennessee Department of Commerce and Insurance ("the Department"). On July 19, 2013, the Board sent Mr. Phan a letter informing him that it had opened a complaint against him based on allegations that he had "fraudulently assisted in the procurement of licenses in exchange for cash." The Board voted to authorize a contested case against Mr. Phan at a meeting on November 4, 2013. On January 31, 2014, the Department filed a notice of hearing and charges with the Board against Mr. Phan. The notice stated that Mr. Phan's conduct constituted a violation of Tenn. Code Ann. § 62-4-127(b)[1] and that a hearing would be held on May 9, 2014.

### The Contested Case Hearing

The contested case was heard by an ALJ on May 9 and 22, 2014. The Department presented testimony by the Board's executive director, Roxana Gumicio, who testified about the two ways to obtain licensure from the Board: (1) by completing the required number of educational hours (to be a cosmetologist, manicurist, or other type of license holder) and passing exams, or (2) by reciprocity, for persons with an active license in another state. To verify a person's qualifications for licensure by reciprocity in Tennessee, the other state must send proof of licensure directly to the Board.

Ms. Gumicio testified that, in 2012, the Board asked one of its employees, Latrisha Johnson, "to produce some files that she herself entered, and the explanation that she gave was that she destroyed them." Ms. Johnson was a licensing technician who processed reciprocity licenses. The Board thereafter found that Ms. Johnson had been buying and selling prescription drugs using the state e-mail system, was irresponsible, and exhibited "unacceptable conduct in the management of the licensing files that she was entrusted to." Ms. Johnson subsequently resigned prior to being terminated. The

---

[1] Tennessee Code Annotated section 62-4-127(b) states, in pertinent part:

> The board may suspend, revoke or refuse to issue or renew any license under this chapter for any of the following causes:
> > (1) Fraud in procuring a license;
> > (2) Unprofessional, immoral or dishonorable conduct;
> > . . . .
> > (8) Any cause for which issuance of a license could have been refused had it existed and been known to the board at the time of the issuance; [or]
> > (9) A violation of this chapter or of any rules duly promulgated under this chapter.

Board sent letters out to the affected licensees requesting documentation of their education and licensure in other states to support their reciprocity licenses. In most cases, either the licensees provided the necessary documentation to support their licensure in Tennessee or the Board obtained the information from the other state where the Tennessee licensee had received his or her license. Ms. Gumicio testified that those who could not produce documents to support their reciprocal licensure were given the opportunity to have a hearing on their case. The Board revoked the reciprocal licenses of any persons who could not produce documents to establish their licensure in another state.

The Department then presented ten witnesses who testified through a Vietnamese interpreter that they gave Mr. Phan money, ranging from $2,000 to $6,500, to obtain their cosmetologist, manicurist, or aesthetician licenses by reciprocity without completing any educational work or having licensure in another state.

The Department also called Mr. Phan as a witness. Mr. Phan testified that he was a licensed cosmetologist and that he had recently become a licensed cosmetology instructor. Early in his testimony, Mr. Phan gave the following responses:

Q. Did you offer to help anyone obtain a cosmetology license in the state of Tennessee?
A. No.
Q. Did you offer to help anyone obtain a cosmetology license through the reciprocity application process in Tennessee?
A. Yes. After—if they complete their education, then I will help.
Q. How did you help them?
A. I just showed them.
Q. What did you show them?
A. Just to show, do this, do that, translate for them.
Q. So you would help them by translating [for] them?
A. Yes.
Q. Did you ever provide an application or form for someone to fill out for a cosmetology license?

At this point in the hearing, the ALJ interjected with a reminder about her previous instructions concerning Mr. Phan's constitutional rights and stated to Mr. Phan's attorney that "if you feel like that you need to instruct him in any way, then you can let me know." Thereafter, Mr. Phan gave the following testimony:

Q. Did you ever make copies of identifying documents for any individuals such as a Social Security card or driver's license?
A. Fifth Amendment.

Q. Did you ever fill out any applications for any individual for a cosmetology license in the state of Tennessee?
A. Fifth Amendment.
Q. Did you ever pay someone at the State of Tennessee to process cosmetology license applications?
A. Fifth Amendment.
Q. Did you ever obtain licenses for anyone through reciprocity in the State of Tennessee?
A. Fifth [A]mendment.
Q. Have you ever taken any money in exchange for a cosmetology license from any individual in the state of Tennessee?
A. Fifth Amendment.

Mr. Phan's attorney conferred with him, and the questioning continued as follows:

Q. Mr. Phan, have you ever taken any money from any individual in any amount in exchange for a cosmetology license?
A. No.

Mr. Phan denied receiving money from all but one of the ten witnesses who testified against him. He stated that he accepted $2,000 from Thuy Nguyen to pay for tuition at the World Academy in Little Rock, Arkansas. As to another witness, Peter Pham, Mr. Phan stated that he told Mr. Pham that his niece should send the application and $2,000 to the BN Career Institute in Houston, Texas. Asked if he received any money from BN Career Institute, Mr. Phan testified that, "if the person goes to school and completes, then they [the school] give me money, but I never did collect on the money." The Department's attorney asked Mr. Phan if he took any of the ten witnesses to a bank to complete an application or have anything notarized. Mr. Phan invoked his Fifth Amendment rights. Mr. Phan also testified that he referred students to the Academic World of Cosmetology in Little Rock, Arkansas, a school that offered cosmetology classes in Vietnamese. He denied ever receiving any money from the school or sending any money to the school. Mr. Phan could not recall whether he had sent the school money on behalf of a student.

Mr. Phan expressly denied receiving money for arranging for licenses to be issued to the ten witnesses who testified against him. He also denied knowing Latrisha Johnson.

The defendant's case began with further testimony by Ms. Gumicio. She answered questions about the Department's database, known as the Regulatory Board System ("RBS"). A licensed technician, like Ms. Johnson, would enter notes and information into the RBS. Certain information must appear in the RBS for a license to be issued to an applicant. Mr. Phan then questioned Ms. Gumicio about a letter the

Department sent to Ms. Johnson on March 13, 2012, particularly the following paragraph regarding the results of an internal audit:

> Based upon concerns regarding the missing reciprocal licensee records and your use of Ms. Buttrey's computer without her knowledge and in her absence from her work area, the department's Internal Audit team recently conducted an audit of the reciprocal licenses issued during the time period of July 1, 2011 through March 8, 2012. Of the five hundred ninety-nine (599) licensees sampled, one hundred fifty-six (156) licensee files were missing. Of the four hundred forty-three (443) licensee files reviewed, twenty-five (25) files had insufficient documentation to support approval of the license or otherwise questionable documentation.

Ms. Gumicio stated that the licenses of the witnesses who had testified in this case fell within the July 1, 2011 to March 8, 2012 time period.

At Mr. Phan's request, the Department produced RBS printouts for the witnesses in this case. Mr. Phan's attorney stated that Ms. Johnson's employee identification number ("CE number") appeared on the RBS screen shots for all seventeen of the former licensees who completed affidavits used in the case against Mr. Phan.

### The Administrative Decision

The ALJ entered an initial order on January 5, 2015, revoking Mr. Phan's cosmetology license and assessing civil penalties against him in the amount of $20,000. This order became final on January 20, 2015. The ALJ denied Mr. Phan's petitions for stay of the initial order and the final order on January 21, 2015.

### Judicial Review

Mr. Phan filed a petition for judicial review in the chancery court on January 21, 2015. He filed a motion for a stay of the effectiveness of the final administrative order on the same day, and the trial court denied this motion on February 4, 2015. Mr. Phan also filed a Motion to Correct or Supplement the Record, or Alternatively to Take Additional Proof on March 13, 2015. The trial court granted Mr. Phan's motion as to those corrections or additions that the Department did not contest, but it excluded all other items requested as corrections or additions by Mr. Phan. The court denied Mr. Phan's request to present additional evidence or to "present to this Court proof of alleged irregularities in procedure before the agency pursuant to Tenn. Code Ann. § 4-5-322(g)."[2]

---

[2] The trial court also noted that, in preparation for the hearing, the court would "review the entire court file, including the material excluded by this Order" and that the court would advise the parties at the hearing should it decide to revisit its ruling.

The hearing on Mr. Phan's petition for judicial review was held on April 17, 2015. In its memorandum and final order entered on February 23, 2016, the trial court affirmed the Board's decision to revoke Mr. Phan's license and to assess civil penalties against him in the amount of $20,000. Mr. Phan appeals.

ISSUES ON APPEAL

Mr. Phan has raised five issues on appeal: (1) Whether the ALJ's order revoking his cosmetology license is void for lack of subject matter jurisdiction or violations of the Open Meetings Act; (2) whether the ALJ's order was obtained through statutory or constitutional violations that denied Mr. Phan due process; (3) whether the ALJ exceeded her authority by imposing a civil penalty in excess of the statutory maximum and related to violations not included in the notice of hearing and charges; (4) whether the ALJ's decision was supported by substantial and material evidence in light of the entire record; and (5) whether the Department prosecuted the case against Mr. Phan with knowledge that some or all of the alleged violations were not grounded in fact or law, thereby warranting an award of attorney fees and costs pursuant to Tenn. Code Ann. § 4-5-325.

STANDARD OF REVIEW

Judicial review of the final decision of an administrative agency is governed by the Tennessee Uniform Administrative Procedures Act ("UAPA"), Tenn. Code Ann. § 4-5-101 *et seq. See Story v. Civil Serv. Comm'n,* No. M2010-01214-COA-R3-CV, 2011 WL 2623904, at *2-3 (Tenn. Ct. App. July 5, 2011). The UAPA limits our scope of review as follows:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h). Under the UAPA, this court, like the trial court, must apply the substantial and material evidence standard to the agency's factual findings. *City of Memphis v. Civil Serv. Comm'n*, 239 S.W.3d 202, 207 (Tenn. Ct. App. 2007).

The UAPA's narrow standard of review for an administrative body's factual determinations "suggests that, unlike other civil appeals, the courts should be less confident that their judgment is preferable to that of the agency." *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988). This Court cannot displace the agency's judgment as to the weight of the evidence even where there is evidence that could support a different result. *Id.*

ANALYSIS

I.      Board's Approval of Contested Case Hearing

Mr. Phan argues that the order revoking his license is void because (1) the Board did not delegate its authority to hear Mr. Phan's case to the ALJ or (2) the Board delegated its authority to an ALJ in violation of the Open Meetings Act. We find both arguments to be without merit.

Tennessee Code Annotated section 4-5-301(c), part of the UAPA, provides that "[t]he agency [the Board] shall determine whether a contested case shall be conducted by an administrative judge or hearing officer sitting alone or in the presence of members of the agency." Mr. Phan asserts that there is no record of the Board delegating its authority to hear Mr. Phan's case to an ALJ. When Mr. Phan raised this issue in the trial court, the Department produced a transcription of a portion of the Board's November 4, 2013 meeting concerning Mr. Phan's case.[3] The transcription states, in pertinent part:

> Herndon: . . . The complaint alleges that the respondent, a licensed cosmetologist instructor, participated in an operation to provide licenses to applicants for a fee and without the applicants completing any educational, experience or exam requirements. The activity would violate our statute for revocation. The complaint file contains several affidavits from the applicants that were approached for these proposals which provide identification, expressions of instructions received that no schooling or

---

[3] Mr. Phan asserts, without further authority, that this transcript was inadmissible under Tenn. R. Evid. 702 because the transcribing paralegal was not competent to testify to the Board's proceedings. The admissibility of evidence is within the trial court's sound discretion, and we review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992). We find no abuse of discretion in the trial court's decision to consider the transcript of the oral proceedings, particularly in light of the court's finding that Mr. Phan made "no persuasive argument that he was prejudiced by this procedure."

examination was required and that the applicants paid large sums of money for this service. I recommend [we] authorize a *formal hearing* with authority to settle, to pursue revocation of the respondent's license and a civil penalty of $1,000 for each of the fourteen affidavits, for a total civil penalty of $14,000.

. . . .

Hereford:   Madame Chairman, I make a motion that we accept the recommendations.

Chairman:   Motion was made by Mr. Hereford that we accept the recommendations. Do we hear a second?

Ali: Second.

Chairman: Seconded by Ms. Ali. All in favor say aye.

Group: Aye.

Chairman. Opposed nay. The ayes carry.

Moreover, a video recording of this meeting is publicly available on the Board's website. *See* https://www.youtube.com/playlist?list=PLWgyob0pqnhxIvuqRZ4X2j238Hy6vq0yC. Although the Board did not expressly mention using an ALJ, this was the most likely meaning in light of the context. We conclude that the Board voted to authorize an ALJ to hear Mr. Phan's case.

Mr. Phan's next assertion is that the Board's delegation of authority is void because it was not done in accordance with the Open Meetings Act, Tenn. Code Ann. §§ 8-44-101–8-44-111. Tennessee Code Annotated section 8-44-104 contains the following pertinent provisions:

(a) The minutes of a meeting of any such governmental body shall be promptly and fully recorded, shall be open to public inspection, and shall include, but not be limited to, a record of persons present, all motions, proposals and resolutions offered, the results of any votes taken, and a record of individual votes in the event of roll call.

(b) All votes of any such governmental body shall be by public vote or public ballot or public roll call. No secret votes, or secret ballots, or secret roll calls shall be allowed. As used in this chapter, "public vote" means a vote in which the "aye" faction vocally expresses its will in unison and in which the "nay" faction, subsequently, vocally expresses its will in unison.

The minutes of the Board's November 4, 2013 meeting do not include the Board's vote authorizing the ALJ to hold a hearing on Mr. Phan's case. In arguing that the Board's delegation is void, Mr. Phan relies upon subsection (a) of Tenn. Code Ann. § 8-44-104(a) and upon Tenn. Code Ann. § 8-44-105, which states: "Any action taken at a meeting in violation of this part shall be void and of no effect . . . ."

The policy behind the Open Meetings Act is stated in Tenn. Code Ann. § 8-44-101: "The general assembly hereby declares it to be the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret." In this case, the decision to authorize the ALJ to hear Mr. Phan's case was conducted at a public meeting with adequate public notice. There is no question of secrecy. While the vote delegating the authority to the ALJ was omitted from the minutes, there is a public record of the Board's decision in the form of the aforementioned video. We decline to find the Board's decision authorizing the ALJ to hold a hearing void under these circumstances simply because of the failure to memorialize the vote in the minutes.[4]

## II. Violations of Constitutional or Statutory Provisions

Mr. Phan next makes numerous arguments that the Board's order revoking his license was obtained through unlawful procedures and in violation of constitutional or statutory provisions.

### A. Insufficient Notice of Complaint.

Mr. Phan asserts that, pursuant to Tenn. Code Ann. § 4-5-320(c), the initial notice of complaint sent to him on July 19, 2013, along with an affidavit from one licensee, was deficient because it did not include all fourteen affidavits procured by the Department or specify that the Department intended to revoke Mr. Phan's license. Tennessee Code Annotated section 4-5-320(c) provides, in pertinent part, that: "No revocation, suspension, or withdrawal of any license is lawful unless, *prior to the institution of agency proceedings*, the agency gave notice by mail to the licensee of facts or conduct that warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license." (Emphasis added). When the notice of the complaint was given to Mr. Phan, the Board had not decided whether to pursue disciplinary action. In the final paragraph of the notice, Ms. Gumicio stated: "Failure to comply with this request [to respond to the allegations of the complaint] may be taken into consideration should the Board pursue disciplinary action relative to this complaint."

---

[4] In *Zseltvay v. Metropolitan Government of Nashville & Davidson County*, 986 S.W.2d 581, 585 (Tenn. Ct. App. 1998), the court was faced with a situation similar to that in the present case: there was adequate notice of the meeting at issue, and it was open to the public, but the action at issue was not included in the minutes. Noting that Tenn. Code Ann. § 8-44-105 applies to "[a]ny action taken at a meeting in violation of this part," the court stated: "[I]t is at least arguable that the failure to include an account of the vote in the subsequently-published minutes of the April 4 meeting was not an action taken at that meeting." *Zseltvay*, 986 S.W.2d at 585. The court concluded that there was "no reason in law or in equity to declare the action void." *Id.*

We find that Mr. Phan was provided with notice of "facts or conduct that warrant[ed]" opening a complaint to consider disciplinary action, as required by Tenn. Code Ann. § 4-5-320(c).

B.   Opportunity to Demonstrate Compliance.

Mr. Phan next argues that he was not given the opportunity to "show compliance with all lawful requirements for the retention of the license," as required under Tenn. Code Ann. § 4-5-320(c).   Mr. Phan filed a response letter to the Board's complaint on August 8, 2013.   Presumably because this letter was stamped "received" by the Department rather than by the Board, Mr. Phan asserts that the Board "was not presented with Mr. Phan's response prior to the initiation of the contested case on January 31, 2014."   The Board was created pursuant to Tenn. Code Ann. § 62-4-103 and is attached to the Department for administrative purposes pursuant to Tenn. Code Ann. § 4-3-1304(a)(13). Ms. Gumicio testified that, once a complaint is filed, the case is turned over to the Department.  We find no merit to Mr. Phan's argument.

C.  The Department, not the Board, filed Notice of Hearing and Charges.[5]

Mr. Phan asserts that the Board, and not the Department, should have filed the notice of hearing and charges against him.   Because the Board is attached to the Department for administrative purposes, it is appropriate for the Department to represent the Board in a contested case hearing before an ALJ.  *See Martin v. Sizemore*, 78 S.W.3d 249, 261-66 (Tenn. Ct. App. 2001) (holding that Department's representation of Board of Examiners for Architects and Engineers before ALJ in a contested case hearing complied with due process).[6]

D.   Procedures regarding Motions.

Mr. Phan argues that he filed "several motions that were ignored by the ALJ altogether or not disposed of in a timely manner, violating the procedure for disposition of motions and effectively depriving Mr. Phan of his right to file motions." The regulations concerning prehearing motions provide, in pertinent part, as follows:

> (3) Time Limits; Argument—A party may request oral argument on a
> motion; however, a brief memorandum of law submitted with the motion is

---

[5] With respect to this and many of the other subissues regarding alleged violations of constitutional or statutory provisions, the State failed to provide any argument in its brief in compliance with Tenn. R. App. P. 27(b).

[6] Mr. Phan also complains that the amount of civil penalties requested in the notice of hearing and charges differs from that recommended by the Board at its meeting.  The notice of hearing and charges cited by Mr. Phan does not include an amount of civil penalties.

preferable to oral argument. Each opposing party may file a written response to a motion, provided the response is filed within seven (7) days of the date the motion was filed. *A motion shall be considered submitted for disposition seven (7) days after it was filed, unless oral argument is granted, or unless a longer or shorter time is set by the administrative judge.*

. . . .

(6) Disposition of Motions; Drafting the Order

(a) When a prehearing motion has been made in writing or orally, the administrative judge shall render a decision on the motion by issuing an order or by instructing the prevailing party to prepare and submit an order in accordance with (b) below.

TENN. COMP. R. & REG. 1360-04-01-.09 (emphasis added). On April 2, 2014, Mr. Phan filed a motion to require the parties to adhere to the Tennessee Rules of Civil Procedure for purposes of discovery. The Department responded on April 7 and, in an order entered on May 2, 2014, the trial court stated that no additional ruling was necessary on this motion "since the applicable procedures and conditions are clearly set out in the UAPA and rules."[7] The rule does not require the ALJ to make a ruling on a motion "submitted for disposition" within a certain period of time. We find no error here.

Mr. Phan next asserts that the ALJ never entered orders disposing of the following motions: motion to compel discovery, motion for a continuance, motion to quash state's notice of use of affidavits and to exclude witnesses, and supplemental motion for a continuance. All of these motions were filed by Mr. Phan on May 5, 2014, just a few days prior to the beginning of the hearing on May 9, 2014. The ALJ listed all of these motions in a review of the technical record at the beginning of the hearing. As will be discussed below, the court ruled upon Mr. Phan's motion for a continuance. Mr. Phan did not bring any of the other motions to the ALJ's attention at the beginning of the hearing for a ruling. These prehearing motions were not "submitted for disposition" within the meaning of Tenn. Comp. R. & Reg. 1360-04-01-.09(3) because they were submitted fewer than seven days before the hearing.

Mr. Phan further complains that the ALJ did not dispose of his Motion for Sanctions and Dismissal Due to Spoliation of Evidence for 192 days. Mr. Phan filed this motion on June 20, 2014, almost a month after the hearing. Mr. Phan "argued that he was unable to present a viable defense because of the destruction of licensure files and the Department's subsequent concealment of this destruction." The motion required the

---

[7] Rule 1360-04-01-.01(3) provides: "In any situation that arises that is not specifically addressed by these rules [the UAPA], reference may be made to the Tennessee Rules of Civil Procedure for guidance as to the proper procedure to follow, where appropriate and to whatever extent will best serve the interests of justice and the speedy and inexpensive determination of the matter at hand."

ALJ to consider "voluminous documents" and the evidence presented at the hearing. We conclude that the ALJ did not err in disposing of it in her initial order.

E.  Improper Denial of Requests for Continuance.

Mr. Phan argues that the ALJ's denial of his multiple requests "for a continuance in order to adequately prepare his case violated his right to a fair hearing."

Pursuant to Tenn. Comp. R. & Reg. 1360-04-01.10(1), "[c]ontinuances may be granted upon good cause shown in any stage of the proceeding." A tribunal's decision to grant or deny a continuance is reviewed under an abuse of discretion standard. *See Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003). An ALJ's decision on a motion for a continuance "should be viewed in the context of all the circumstances existing when the motion is filed." *Id.* Factors a reviewing court should consider include the following: "(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." *Id.* (footnotes omitted).

Mr. Phan's main complaint with respect to the ALJ's failure to grant a continuance is that he was unable to complete necessary discovery and review documents provided by the Department just prior to or during the hearing. Under the UAPA, the Department is only required to give 30 days' notice of a hearing. TENN. COMP. R. & REG. 1360-04-01-.06(2). This matter was initially filed on January 31, 2014, and the hearing was set for May 9, 2014. Thus, Mr. Phan had more than ninety days' notice of the hearing. He did not begin his discovery requests until over a month had elapsed from the notice of hearing. When Mr. Phan requested the Board's file in February 2014, the Department provided it to Mr. Phan in two weeks. On March 13, 2014, Mr. Phan made his initial informal discovery request for other documents and, on April 2, 2014, Mr. Phan filed a Motion for Discovery to be Effectuated in Accordance with the Tennessee Rules of Civil Procedure. The Department produced some of the documents requested by Mr. Phan, but took the position that others were not subject to discovery. On May 1, 2014, Mr. Phan filed a motion to compel discovery, which was opposed by the Department.[8] On May 5, 2014, four days before the hearing, Mr. Phan filed a motion for a continuance.

We agree with the trial court's conclusion that the ALJ "properly and respectfully denied" all of Mr. Phan's requests for a continuance and that "[t]here was no abuse of discretion or any other prejudicial error in the ALJ using her discretion to manage the

---

[8] According to the parties' briefs, the Department produced additional documents four days prior to the hearing. Mr. Phan also cites documents produced by the Department two days prior to the hearing. He did not, however, request these documents until after a conference call between the parties and the ALJ on May 5, 2014.

case and to proceed with the contested case hearing." Mr. Phan has failed to demonstrate how the ALJ abused her discretion in denying his requests for a continuance or how any such error would have affected the outcome of the case.

F.   Withholding Portions of Board's File.

Mr. Phan alleges that the Department withheld portions of the Board's file in this case in violation of Tenn. Code Ann. § 4-5-311(d).[9]  Mr. Phan asserts that, when he requested the Board's file, he should have received copies of the agreed orders entered into between the Board and the fourteen persons who completed affidavits stating that they had paid Mr. Phan money in exchange for a reciprocity cosmetology license.  The Board takes the position that these agreed orders were not part of Mr. Phan's file because they resolved the cases of other licensees.  These agreed orders appeared on the Department's exhibit list, and Mr. Phan received copies of the orders prior to the hearing. We find no error here.

G.   Denial of Opportunity to Contest Matters Judicially Noticed.

Mr. Phan asserts that the ALJ took judicial notice of the agreed orders between the Department and the witnesses in this case (whose licenses had been revoked) and prohibited him from attacking the validity of the agreed orders.

Pursuant to Tenn. Code Ann. § 4-5-313(6)(A)(i), "[o]fficial notice may be taken of . . . [a]ny fact that could be judicially noticed in the courts of this state."  Tennessee Code Annotated section 4-5-313(6)(B) provides:

> Parties must be notified before or during the hearing, or before the issuance of any initial or final order that is based in whole or in part on facts or material noticed, of the specific facts or material noticed and the source thereof, . . . and be afforded an opportunity to contest and rebut the facts or material so noticed.

In this case, the ALJ did not take judicial notice of the agreed orders or rely on them in making her decision to revoke Mr. Phan's license.  Rather, the ALJ relied on the testimony of the witnesses who appeared at the contested case hearing in making her factual findings.  Mr. Phan cross-examined each of these witnesses.

---

[9] Tennessee Code Annotated section 4-5-311(d) states:  "Any party to a contested case shall have the right to inspect the files of the agency with respect to the matter and to copy therefrom, except that records, the confidentiality of which is protected by law, may not be inspected."

Moreover, contrary to Mr. Phan's assertion, the ALJ did allow Mr. Phan to attack the validity of the agreed orders at the contested case hearing. In cross-examining Ms. Gumicio, Mr. Phan inquired about a case in which an agreed order had been entered for a person's license to be revoked, and the person's license was later reinstated. Ms. Gumicio explained that the person may have subsequently provided the necessary documentation. The ALJ allowed Mr. Phan to pursue this line of questioning over the Department's objection. Moreover, the ALJ directed the Department to provide Mr. Phan with additional information regarding the persons who signed the agreed orders.

We, like the trial court, discern "no prejudicial error in the ALJ's handling of the Agreed Orders." The ALJ did not abuse her discretion in her consideration of the agreed orders.

H.   Failure to Exercise Independent Decision Making in Adopting Initial Order.

Next, Mr. Phan argues that the ALJ failed to exercise independent decision making because she used much of the Department's proposed order in crafting her initial order.

Our Supreme Court has stated that, with respect to a court's use of party-prepared findings of fact and conclusions of law, two conditions must be satisfied:  "First, the findings and conclusions must accurately reflect the decision of the trial court. Second, the record must not create doubt that the decision represents the trial court's own deliberations and decision." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). Contrary to Mr. Phan's assertions, the ALJ's initial order differs substantially from the proposed order submitted by the Department. The proposed order was 52 pages long and included 249 findings of fact; the initial order is 28 pages long and includes 148 findings of fact. Unlike the proposed order, the initial order does not include a conclusion that Mr. Phan violated Tenn. Code Ann. § 62-4-127(b)(8). Moreover, the initial order assesses civil penalties of $20,000, whereas the proposed order included civil penalties of $30,000. The initial order addresses Mr. Phan's motion for sanctions and dismissal, a matter not addressed in the proposed order.

As the trial court stated, "the ALJ's Initial Order differed materially from the Department's proposed Initial Order." We find no error in the ALJ's reliance on the proposed order in preparing the initial order.

I.   Failure to Follow Procedure regarding Ex Parte Communication.

Mr. Phan asserts that the ALJ mishandled two alleged ex parte communications in violation of Tenn. Code Ann. § 4-5-304.[10] The first is an email from the Department's

---

[10] Tennessee Code Annotated section 4-5-304 states, in pertinent part:

counsel to the ALJ stating that counsel had not received a pre-hearing order. When the ALJ responded to the email, the ALJ sent her response and the original email to Mr. Phan's counsel, thereby providing notice of the communication and the identity of the person from whom it was received. *See* Tenn. Code Ann. § 4-5-304(e). The ALJ emailed a pre-hearing order to counsel for both parties, and a copy of this email appears in the record. The ALJ's handling of this benign communication complied with Tenn. Code Ann. § 4-5-304. Moreover, the communication in no way affected the merits of the ALJ's decision and, therefore, is not a basis for reversing the ALJ's decision. *See* Tenn. Code Ann. § 4-5-322(i) (stating that an agency decision shall not be "reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.")

The other communication identified by Mr. Phan is a letter from the Department to the ALJ that was hand-delivered. (Mr. Phan was copied on the letter.) According to Mr. Phan's reasoning, hand delivery necessarily means that counsel for the Department and the ALJ "exchanged at least a sentence or two." There is no evidence in the record that hand delivery was accomplished by counsel for the Department directly to the ALJ and that these two person engaged in an improper conversation. We find no basis for Mr. Phan's argument here.

---

(a) Unless required for the disposition of ex parte matters specifically authorized by statute, an administrative judge, hearing officer or agency member serving in a contested case proceeding may not communicate, directly or indirectly, regarding any issue in the proceeding, while the proceeding is pending, with any person without notice and opportunity for all parties to participate in the communication.
. . . .
(c) Unless required for the disposition of ex parte matters specifically authorized by statute, no party to a contested case, and no other person may communicate, directly or indirectly, in connection with any issue in that proceeding, while the proceeding is pending, with any person serving as an administrative judge, hearing officer or agency member without notice and opportunity for all parties to participate in the communication.
(d) If, before serving as an administrative judge, hearing officer or agency member in a contested case, a person receives an ex parte communication of a type that may not properly be received while serving, the person, promptly after starting to serve, shall disclose the communication in the manner prescribed in subsection (e).
(e) An administrative judge, hearing officer or agency member who receives an ex parte communication in violation of this section shall place on the record of the pending matter all written communications received, all written responses to the communications, and a memorandum stating the substance of all oral communications received, all responses made, and the identity of each person from whom the person received an ex parte communication, and shall advise all parties that these matters have been placed on the record. Any party desiring to rebut the ex parte communication shall be allowed to do so, upon requesting the opportunity for rebuttal within ten (10) days after notice of the communication.

J.   Failure to Order Production of Certain Documents.

Mr. Phan asserts that the ALJ inappropriately denied his discovery requests, making it impossible for him to defend against the Department's claims.  Decisions regarding discovery "rest within the sound discretion of the trial court" and "will not be reversed on appeal unless a clear abuse of discretion is demonstrated." *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992).  In judicial review of an administrative proceeding, an error must affect the merits of the decision to provide a basis for reversal.  *See* Tenn. Code Ann. § 4-5-322(i).

Mr. Phan again argues that the Board should have provided the files of the witnesses who testified against him with the Board's file in this matter.  The ALJ determined that Mr. Phan's contested case hearing would not be used to retry the merits of the revocation cases of these witnesses.  Mr. Phan was, however, afforded the opportunity to cross-examine each witness who testified against him.  He also received substantial documentation regarding the witnesses, including affidavits, agreed orders, and RBS data.

Mr. Phan also argues that the ALJ erred in denying, on the basis of the work product doctrine, his request for questions posed to the witnesses in creating their affidavits.  Mr. Phan fails to show how the ALJ abused her discretion in limiting the scope of the hearing in this way.  Discovery concerning the questions posed to the witnesses in preparing these affidavits was unnecessary in light of the fact that Mr. Phan had the opportunity at the hearing to examine the witnesses upon whose testimony the ALJ relied in revoking his license.

Also at issue is the ALJ's denial of Mr. Phan's request for correspondence between certain Board members and the application by the ALJ of the Tennessee Rules of Civil Procedure.  We disagree with Mr. Phan's statement that, pursuant to Tenn. Code Ann. § 4-5-311(d), the only possible limitation upon his right to inspect and copy the agency's entire file was confidentiality.  The applicable regulations contemplate reference to the Rules of Civil Procedure for guidance in situations not otherwise "specifically addressed" by the rules.  TENN. COMP. R. & REG. 1360-04-01-.01(3).  The ALJ's reliance on Tenn. R. Civ. P. 26.02(1), which addresses the basis upon which the Department could object to discovery, was appropriate.  The ALJ did not err in finding that this request was unduly burdensome.

Mr. Phan also complains that the ALJ erred in denying his request for Latrisha Johnson's employment file and his request for documentation regarding an investigation regarding Ms. Johnson.  The ALJ found that the employment file was irrelevant and confidential and that the investigation documents were confidential and/or protected by the work product doctrine.  Mr. Phan received substantial documentation regarding Ms.

Johnson's termination and the licensees whose data she entered or edited in RBS. Mr. Phan fails to show how further discovery concerning Ms. Johnson's employment file would be likely to lead to any relevant evidence concerning the revocation of Mr. Phan's license. Mr. Phan does not show how the ALJ's discovery rulings with respect to Ms. Johnson's employment file could have affected the merits of the ultimate decision against him and, therefore, do not provide a basis for reversal.

Mr. Phan goes on to assert that the ALJ erred in denying his request for the Department's internal audit released in May 2012.[11] The results of the internal audit are in the administrative record in the Comptroller's September 2012 Performance Audit of Regulatory Boards and Commissions, in Ms. Johnson's termination letter, and in testimony at the hearing. Even if the ALJ's ruling were in error, there is no basis to conclude that this error affected the outcome of Mr. Phan's contested case hearing. *See* Tenn. Code Ann. § 4-5-322(i).

We find no reversible error in any of the discovery errors raised by Mr. Phan.

K.  Issuance of Ruling on *Brady* Material.

On April 9, 2014, Mr. Phan filed a Notice of State's Duty to Preserve and Record *Brady*[12] Material. The Department responded that the duty to disclose exculpatory evidence applies only in criminal proceedings, not in civil matters, and that liberal discovery was available in administrative proceedings. The Department, therefore, requested that Mr. Phan's notice be quashed and that the ALJ take judicial notice that the *Brady* rule does not apply in an administrative proceeding. In an order entered on May 2, 2014, the ALJ stated: "Although no relief was requested in this Notice, to prevent confusion it is nevertheless determined that the State has no such duty in the present matter." The ALJ thus found that *Brady* did not apply to the administrative proceeding.

On appeal, Mr. Phan asserts that his notice required no response or ruling, but just served to put the Department on notice "that it was required to record and preserve any

---

[11] The State points out that internal audit files are confidential pursuant to Tenn. Code Ann. §§ 4-3-304(7) and 10-7-504(a)(22). Tennessee Code Annotated section 4-3-304(7) states, in pertinent part:

> Notwithstanding any law to the contrary, working papers created, obtained or compiled by an internal audit staff are confidential and are therefore not an open record pursuant to title 10, chapter 7. "Working papers" includes, but is not limited to, auditee records, intra-agency and interagency communications, draft reports, schedules, notes, memoranda and all other records relating to an audit or investigation by internal audit staff;

Mr. Phan's request, however, was for the audit itself.

[12] Mr. Phan refers here to *Brady v. Maryland*, 373 U.S. 83 (1963), a case involving the state's duty to provide a criminal defendant with exculpatory evidence.

witness interviews it was undertaking, in particular, the interviews and meetings to be held during the week of April 7 to 11, 2014, at its offices, between Attorneys and agents for the Department and various witnesses in this matter." According to Mr. Phan, the notice ensured "preservation of the witness interviews for a potential subsequent criminal prosecution." We find no abuse of discretion in the ALJ's order stating that the *Brady* rule would not apply in the administrative proceeding. Mr. Phan fails to show how the ALJ's statement of the law—that the *Brady* rule does not apply in administrative proceedings—could have had any detrimental effect upon the outcome of his case.

L. Making Adverse Inferences.

Mr. Phan's final argument regarding the ALJ's alleged constitutional or statutory violations is that the ALJ erred in making adverse inferences against Mr. Phan based on his invocation of his Fifth Amendment rights against self-incrimination while failing to make any adverse inferences against the Department despite its employee's admitted destruction of evidence. Our Supreme Court has held that "the trier of fact may draw a negative inference from a party's invocation of the Fifth Amendment privilege in a civil case only when there is independent evidence of the fact to which a party refuses to answer by invoking his or her Fifth Amendment privilege." *Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 506 (Tenn. 2012).

Mr. Phan invoked the Fifth Amendment in response to the following questions:

- Did you ever fill out any applications for any individual for a cosmetology license in the state of Tennessee?
- Did you ever pay someone at the State of Tennessee to process cosmetology license applications?
- Did you ever obtain licenses for anyone through reciprocity in the state of Tennessee?
- Have you ever taken any money in exchange for a cosmetology license from any individual in Tennessee?

Based upon Mr. Phan's invocation of the Fifth Amendment in response to these questions, the ALJ drew the following adverse inferences:

(1) [Mr. Phan] made copies of identification documents, such as a social security card or driver's license, for individuals seeking a cosmetology license.

(2) [Mr. Phan] obtained cosmetology licenses through the reciprocity process.

(3) [Mr. Phan] has taken money in exchange for a cosmetology license from several individuals.

These findings of fact were corroborated by the testimony of several witnesses. Moreover, these adverse inferences were not necessary to the ALJ's decision in this case. We agree with the conclusion of the trial court that "there is substantial and material evidence in the record to support the finding that Mr. Phan received substantial consideration for procuring legally-flawed cosmetology licenses on behalf of people who were not otherwise eligible to receive them, even if the ALJ had not made adverse inferences against Mr. Phan."

We find no merit in Mr. Phan's argument regarding the ALJ's failure to make adverse inferences against the Department based upon the misdeeds of one of its employees. The Department terminated Ms. Johnson's employment as soon as it learned of her misconduct, and the Board's revocation of Mr. Phan's license is not affected by Ms. Johnson's actions.

### III.    Civil Penalties

Mr. Phan's next argument is that the Board exceeded its statutory authority in imposing a civil penalty of $20,000. The interpretation of statutes "involves questions of law which appellate courts review de novo without a presumption of correctness." *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 414 (Tenn. 2013).

Tennessee Code Annotated section 56-1-308(a) provides, in pertinent part:

> With respect to any person required to be licensed, permitted, or authorized by any board, commission or agency attached to the division of regulatory boards, each respective board, commission or agency may assess a civil penalty against the person in an amount not to exceed one thousand dollars ($1,000) *for each separate violation* of a statute, rule or order pertaining to the board, commission or agency.

(Emphasis added). In this case, the Board found that Mr. Phan had violated two of the statutory grounds for revocation of a license: fraud in procuring a license, pursuant to Tenn. Code Ann. § 62-4-127(b)(1), and "[u]nprofessional, immoral or dishonorable conduct," pursuant to Tenn. Code Ann. § 62-4-127(b)(2). Because Mr. Phan was found to have violated these statutory prohibitions with respect to ten individuals, the ALJ assessed civil penalties in the total amount of $20,000. The regulations in effect at the time provided that the maximum penalty for a violation of each of these statutory provisions was $1,000.[13]

---

[13] Mr. Phan argues that this version of the regulations was "facially invalid" because it was inconsistent with Tenn. Code Ann. § 56-1-308(a), which he interprets as setting a maximum civil penalty for all violations of a statute at $1,000. We disagree with this interpretation of Tenn. Code Ann. § 56-1-308(a), because the statute unambiguously allows for the assessment of a civil penalty "in an amount not to

Mr. Phan also asserts that a civil penalty may not be imposed unless the behavior at issue is specifically set forth in the notice of hearing and charges.  Tennessee Code Annotated section 4-5-307(b) provides that the notice of hearing must include the following:

(1) A statement of the time, place, nature of the hearing, and the right to be represented by counsel;
(2) A statement of the legal authority and jurisdiction under which the hearing is to be held, including a reference to the particular sections of the statutes and rules involved; and
(3) A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter, upon timely, written application a more definite and detailed statement shall be furnished ten (10) days prior to the time set for the hearing.

In the present case, the notice of hearing identified seventeen licensees who alleged that they had paid Mr. Phan to obtain a license.  The ALJ found that Mr. Phan committed violations involving ten individuals, two of whom were not listed on the notice of hearing and charges.  The testimony of Peter Pham regarding the licenses he purchased from Mr. Phan for his cousin and niece is consistent with the other claims asserted in the notice. Mr. Phan did not object to Mr. Pham's testimony at the hearing.

We find that the ALJ's assessment of civil penalties was consistent with the authority granted by Tenn. Code Ann. § 62-4-127(b) and § 56-1-308.

## IV.    Substantial and Material Evidence

Mr. Phan argues that the ALJ's findings of fact are not supported by substantial and material evidence in light of the entire record. Under the UAPA, this court, like the trial court, must apply the substantial and material evidence standard to the agency's factual findings. *City of Memphis*, 239 S.W.3d at 207.  Substantial and material evidence is "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Macon v. Shelby Cnty. Gov't Civil Serv. Merit Bd.*, 309 S.W.3d 504, 508 (Tenn. Ct. App. 2009) (quoting *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005)). It is "'something less than a preponderance of the evidence, but more than a scintilla or glimmer.'" *Id.* (quoting *Wayne Cnty.*, 756 S.W.2d at 280).

---

exceed one thousand dollars ($1,000) *for each separate violation* of a statute."  (Emphasis added).  *See* TENN. COMP. R. & REG. 0440-01-.14.

Mr. Phan contends some of the ALJ's factual findings are not supported by substantial and material evidence:

Mr. Phan's duties.  Mr. Phan raises issues concerning the ALJ's findings with respect to the existence of a written code of ethics and an affirmative duty to "engage in professional, moral, and honorable conduct."  These specific findings are irrelevant to the ALJ's decision regarding the revocation of Mr. Phan's license and we, therefore, decline to consider these issues.

Mr. Phan's invocation of his Fifth Amendment rights.  Mr. Phan's argument here is that, although he invoked the Fifth Amendment in response to certain questions, at other points during the hearing he answered similar questions.  We find, however, that the ALJ's findings (quoted above) that Mr. Phan refused to answer certain questions are accurate and that the ALJ's conclusions of law (quoted above) accurately reflect the totality of Mr. Phan's testimony.

Process to obtain a license by reciprocity.  Mr. Phan here sets forth alleged inconsistences and irrelevancies in the record concerning the process and time required for obtaining a license by reciprocity.  We fail to see how any of these matters affect the outcome in this case and, therefore, decline to consider them.

Latrisha Johnson.  Mr. Phan objects to some of the ALJ's findings regarding Ms. Johnson.  The ALJ found that Ms. Johnson's CE number appeared on "all the RBS screen printout sheets that were provided for all seventeen (17) of the witnesses in this case."  Mr. Phan complains that only sixteen licensees' RBS data was entered into evidence, and that only seven of these individuals actually testified at the hearing.  The "witnesses" to whom the ALJ is referring here are those who completed affidavits.  For purposes of its assessment of civil penalties, the ALJ considered only those claims based upon testimony at the hearing.

Mr. Phan also finds problems with the following finding:  "Most of the 118 files that were missing or did not have the proper documentation were resolved by contacting the licensees, who either provided proof [of] qualifications or were instructed about what they needed to do."  Mr. Phan first points out that there were actually 181 files with missing or improper documentation.  Use of the wrong number appears to be a typographical error because the ALJ used the correct number (181) a few paragraphs earlier.  Mr. Phan further asserts that there is no competent testimony as to what the licensees were told.  Ms. Gumicio testified about how the Board handled this situation:  a complaint was filed stating that the licensee "needed to simply prove how they got their license."  We find no reversible error here.

Findings regarding individual licensees/witnesses.

Next, Mr. Phan alleges that the ALJ made findings with respect to individual licensees "with no evidence in the record to support the factual conclusions," and he discusses eight of the witnesses, citing problems. In general, he argues, there was no proof of payment; "there was no proof of the ability of these persons to come up with thousands of dollars; there was no proof that many of the witnesses knew the requirements of licensure; and there was no proof whatsoever of Mr. Phan's involvement with anyone at the Board's licensing office."

We find it unnecessary to address all of Mr. Phan's arguments regarding each witness. In most instances, the issue boils down to weighing the credibility of the witnesses against Mr. Phan's credibility. When an ALJ conducts a hearing, she is in the best position to evaluate credibility, and a reviewing court must give her credibility determination great weight. *See City of Memphis v. Civil Serv. Comm'n*, 238 S.W.3d 238, 243 (Tenn. Ct. App. 2007) ("[T]he substantial and material evidence standard does not justify reversal of an administrative decision only because the evidence could also support another result.").

The trial court made the following statements regarding its evaluation of this case under the substantial and material evidence standard:

[T]his is not a close case. The record is replete with substantial and material evidence that supports the ALJ's ruling that Mr. Phan sold licenses to several people who were not eligible to receive licenses by reciprocity. This conduct of selling licenses would have been unlawful (although less egregious) even if the putative licensees had been legally eligible to seek licenses through the reciprocity process. Mr. Phan did not inform the proposed licensees that they were required to meet applicable licensing requirements, such as educational requirements or the requirement of holding an equivalent license from another state. The ALJ committed no error in discrediting or disregarding Mr. Phan's selective, bare denials or in not believing Mr. Phan's testimony that he was trying to help the victims.

In the limited instances where Mr. Phan admitted to receiving money, his claim, for instance, that the money was for tuition at one or more out-of-state cosmetology schools was simply not worthy of credence given that there is no proof that he had authority to collect tuition for any school of cosmetology. If Mr. Phan was acting merely as a helpful conduit for conveying tuition to schools, then he might have been willing to refund the money to people who asked for refunds. There is no proof that Mr. Phan ever passed any money along to the schools and no proof that any of the proposed licensees actually attended these schools during the relevant time

- 22 -

period. It is also undisputed in the record that Mr. Phan never refunded any money to the people who paid him money in the course of the transactions in question.

(Footnote omitted). We agree with the trial court's analysis and find no reversible errors in the ALJ's findings with respect to the witnesses who testified that they paid Mr. Phan in exchange for a reciprocity license.

## V. Attorney Fees

Mr. Phan's final argument is that he is entitled to attorney fees pursuant to Tenn. Code Ann. § 4-5-325, which provides:

> (a) When a state agency issues a citation to a person, local governmental entity, board or commission for the violation of a rule, regulation or statute and such citation results in a contested case hearing, at the conclusion of such hearing, the hearing officer or administrative law judge may order such agency to pay to the party issued a citation the amount of reasonable expenses incurred because of such citation, including a reasonable attorney's fee, if such officer or judge finds that the citation was issued:
> (1) Even though, to the best of such agency's knowledge, information and belief formed after reasonable inquiry, the violation was not well grounded in fact and was not warranted by existing law, rule or regulation; or
> (2) For an improper purpose such as to harass, to cause unnecessary delay or cause needless expense to the party cited.
> (b) If a final decision in a contested case hearing results in the party issued a citation seeking judicial review pursuant to § 4-5-322, the judge, at the conclusion of the hearing, may make the same findings and enter the same order as permitted the hearing officer or administrative law judge pursuant to subsection (a).

Mr. Phan asserts that he is entitled to attorney fees because the Department "prosecuted" him despite knowing that the Board did not validly authorize that action be taken against him; Ms. Johnson destroyed records that allegedly would have exonerated him; and at least two of the persons names in the notice of hearing and charges later had their licenses reinstated and held valid licenses at the time of revocation.

There is no basis in the record to find that the Board's claims against Mr. Phan were not "well grounded in fact" and "warranted by existing law." Tenn. Code Ann. § 4-5-325(a)(1). Because this Court has rejected Mr. Phan's arguments challenging the ALJ's revocation of his license, we find no merit to his claim for attorney fees.

- 23 -

CONCLUSION

The judgment of the trial court is affirmed in all respects. Costs of appeal are assessed against the appellant, Lee Phan, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE